Nancy JONES, Appellee,

v.

The BOARD OF GOVERNORS OF the UNIVERSITY OF NORTH CAROLINA and its constituent institution The University of North Carolina at Charlotte; E.K. Fretwell, Jr., Chancellor of UNCC; James H. Werntz, Vice Chancellor for Academic Affairs of UNCC; and Louise Schlachter, Dean of School of Nursing of UNCC, Appellants.

No. 83–1121.

United States Court of Appeals, Fourth Circuit.

Argued March 1, 1983.

Decided April 1, 1983.

714

Thomas J. Ziko, Associate Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen., Elizabeth C. Bunting, Asst. Atty. Gen., Raleigh, N.C., on brief), for appellants.

John T. Nockleby, Charlotte, N.C. (John W. Gresham, Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., Charlotte, N.C., on brief), for appellee.

Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

The University of North Carolina at Charlotte (the University or UNCC) appeals from a preliminary injunction issued by the district court that ordered the reinstatement of plaintiff Nancy Jones as a student in the UNCC College of Nursing pending resolution on the merits of her due process challenge to disciplinary action taken against her by the University. Finding that injunctive relief was appropriate on the facts presented, we affirm the order of the district court. 557 F.Supp. 263.

I

The undisputed facts, in general summary, are as follows.

Nancy Jones has been enrolled as a student in the UNCC College of Nursing at all

times relevant to this appeal. The incident from which this action arose occurred in October 1982, when Jones was alleged to have cheated on a final examination by procuring answers to two questions from a professor, changing her paper, and turning it in. Five days later, Jones was informed by the Dean of the Nursing School that she had been accused of cheating and that she could either accept a failing grade in the course or be tried before a University Student Court comprised of three students. Jones opted for a hearing before the Student Court, where she was found guilty of "academic dishonesty."

Pursuant to University regulations, Jones appealed the decision of the Student Court to the UNCC Chancellor, and requested a new hearing before a Chancellor's Hearing Panel comprised of three University faculty members. The Chancellor determined—and the parties on appeal evidently are in accord—that irregularities in the Student Court hearing made that proceeding fatally defective. Accordingly, the Chancellor requested the Hearing Panel to conduct another hearing at which both sides could present evidence on the issue of guilt. After hearing evidence for approximately eight hours, and deliberating for twenty minutes, the Hearing Panel made and reported to the Chancellor a determination that Jones was "not guilty" of the cheating charge.

The University Counsel then filed an objection with the Chancellor to this determination by the Hearing Panel. The Vice-Chancellor for Academic Affairs, upon delegation from the Chancellor, reviewed the transcript of the proceedings before the Hearing Panel, as well as memoranda submitted by counsel, and reached a contrary determination that Jones was guilty of the charge. He therefore adopted the sanction recommended originally by the Student Court: that Jones be given a failing grade for the course and be placed on disciplinary probation for one semester. As a consequence, the University cancelled Jones's registration in the College of Nursing for the spring 1983 semester, because a passing grade in the course at issue was a prerequisite to all other courses in the College.

Jones then filed suit under 42 U.S.C. § 1983 in federal district court, alleging that the University's handling of her case had violated her rights to procedural due process. Pending resolution of this suit on the merits, the district court granted Jones's motion for a preliminary injunction and ordered that she be reinstated as a student in good standing in the College of Nursing. On appeal, the University challenges the issuance of a preliminary injunction as an abuse of the district court's discretion.

## II

The standards by which we evaluate the propriety of this preliminary injunction are basically those enunciated in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.,* 550 F.2d 189 (4th Cir.1977). The question of whether a preliminary injunction should issue turns upon assessment of (1) plaintiff's likelihood of success on the merits, (2) the likelihood that plaintiff will suffer irreparable injury without an injunction, (3) the likely injury that defendant will sustain upon issuance of an injunction, and (4) the public interest. *See also Fort Sumter Tours, Inc. v. Andrus,* 564 F.2d 1119, 1124 (4th Cir.1977). If the balance of hardships tips decidedly in the plaintiff's favor, an injunction preserving the status quo should issue "if, at least, grave or serious questions are presented." *North Carolina State Ports Authority v. Dart Containerline Co.,* 592 F.2d 749, 750 (4th Cir.1979).

## III

In applying these factors to review a preliminary injunction issued in the unique context of academic disciplinary procedures, we emphasize at the outset our understanding that federal courts must accord great deference to the administration of those procedures by state educational institutions. *See Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975). The federal judicial power, in cases of this kind, does not run to the

imposition of some abstract level of procedural regularity upon academic disciplinary processes but only to ensuring "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729, 739, 42 L.Ed.2d 725 (1975).

■ With this substantive orientation in mind, we start by noting that the balance of hardships presented here weighs heavily in favor of plaintiff Jones. As the district court concluded, without a preliminary injunction Jones will obviously suffer irreparable injury: she will be barred from taking courses during the spring semester, delaying the time at which her ability to work as a nurse will come to fruition; she will have a gap in her education which she will be forced to explain throughout her professional life; and she will be deprived of the opportunity to complete her education with her fellow classmates. In contrast, we find little force in the University's assertions that its disciplinary code or academic standing and integrity will be harmed to any significant degree by a court order requiring Jones's reinstatement pending resolution of her lawsuit. While we recognize the University's institutional interest in speedy resolution of disciplinary charges and in maintaining public confidence in the integrity of its processes, Jones will suffer far more substantial, concrete injury if the injunction is dissolved and she is ultimately vindicated than will the University if the injunction stands and its position is finally upheld.

■ Given this balance of hardships, the district court's issuance of a preliminary injunction preserving the *status quo ante* was entirely proper if Jones has presented "grave or serious questions" of procedural due process violations. Without venturing into prejudgment of the merits of Jones's claim and reiterating our awareness of the general substantive difficulty of establishing any such claim in the instant context, it suffices to conclude that this one does raise sufficiently grave and serious questions to meet the test for interim injunctive relief.

The claim is essentially that in a number of critical respects the concededly confused and arguably irregular (in relation to stated procedures) course of proceedings followed by the University did deprive Jones of "rudimentary precautions against unfair or mistaken findings of misconduct," *see Goss v. Lopez, supra.* For present purposes it suffices to identify in summary fashion only the following specific points of challenge to the proceedings, noting that others of arguably equal significance are also made.

The procedures commenced with a student tribunal's adverse determination which, by concession of the University itself, was so flawed that it was completely set aside by responsible University officials. This was followed by the confused and ambiguous convening by the University's chief administrative officer of another tribunal whose exact role—whether as *de novo* fact-finder, merely advisory fact-finder, or appellate reviewer—was at best unclear throughout to all concerned. This latter tribunal's determination favorable to Jones—reached after a full evidentiary hearing and formally expressed as a factual finding of "not guilty" of the academic offense charged—was then either "reversed" as a finding or "disregarded" as advice by the ultimate decision-maker, a University officer acting by delegation of the chief administrative officer. This ultimate decision was concededly made solely upon review of the written record of the hearing tribunal's evidentiary hearing and without any expression of reasons for the reviewing officer's rejection of the tribunal's determination, whether that determination was rendered as finding or as advice.

These specific points of attack along with others whose general factual accuracy is essentially undisputed, raise serious questions both of fact and law under controlling procedural due process doctrine. There are, in the first place, rather serious open questions about the contours of the general doctrine.

■ It is axiomatic, as the University rightly points out, that both in this and

related contexts of state action, not every departure from a state agency's stated or customary procedures constitutes a denial of constitutionally guaranteed procedural due process. *See Bates v. Sponberg,* 547 F.2d 325, 329–31 (6th Cir.1976); *Winnick v. Manning,* 460 F.2d 545, 550 (2d Cir.1972). Indeed, the fundamental principle seems now established that in these cases the source of procedural guarantees is to be found solely in the due process clause rather than in any specific procedures provided by the state. *See Hewitt v. Helms,* —— U.S. ——, —— – ——, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); *Arnett v. Kennedy,* 416 U.S. 134, 185, 94 S.Ct. 1633, 1659, 40 L.Ed.2d 15 (1974) (White, J., concurring and dissenting).

Obviously, however, to the extent a state's procedures directly embody fundamental guarantees grounded in the due process clause, a significant departure from those procedures would as well violate the underlying constitutionally based guarantees. Furthermore, there persists in controlling decisions of the Supreme Court recognition that significant departures from stated procedures of government and even from isolated assurances by governmental officers which have induced reasonable and detrimental reliance may, if sufficiently unfair and prejudicial, constitute procedural due process violations, *see United States v. Caceres,* 440 U.S. 741, 752–53 & n. 15, 99 S.Ct. 1465, 1472 & n. 15, 59 L.Ed.2d 733 (1979). Finally, while it is established that procedural due process guarantees do not include any general requirement of reasonableness in a state agency's interpretation and application of its stated procedures, *Wood v. Strickland,* 420 U.S. 308, 325–26, 95 S.Ct. 992, 1002, 43 L.Ed.2d 214 (1975), the Supreme Court has recently recognized that there exists the possibility of an "interpretation . . . so extreme as to be a violation of due process," *Board of Education v. McCluskey,* —— U.S. ——, ——, 102 S.Ct. 3469, 3472, 73 L.Ed.2d 1273 (1982).

Application of these still evolving principles in this, as in any case, of course turns upon critical factual determinations which have here yet to be made. These may reveal Jones's claim to be wholly lacking in merit under any conceivable application of controlling doctrine, or, on the other hand, clearly meritorious under any. Rather than either of these, the factual determinations may require the court to make a new interpretation or application of doctrine. We of course venture no opinion as to the facts that should be found, nor upon whether and how any facts that may be found will invoke the controlling doctrine. We hold only that the questions of fact and law raised on the record at this point are, under controlling doctrine, sufficiently serious and grave ones that, when considered with the balance of potential harms, the district court's injunctive order should stand pending trial.

It goes without saying that, to the extent general docket considerations permit, the interests of all concerned—particularly those of the University and the public—will be served by the earliest possible disposition of this case on its merits.

AFFIRMED.