Rigoberto GUERRA, Jr., Private, United States Army, Plaintiff–Appellee,

v.

Hugh F. SCRUGGS, Colonel, Commanding Officer, 7th Special Forces Group, United States Army; Michael W.P. Stone, Secretary of the U.S. Army, and their respective successors, in their official capacity, Defendants–Appellants.

No. 90–1164.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1991.

Decided Aug. 9, 1991.

---

Robert V. Zener, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Anthony J. Steinmeyer, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Margaret P. Currin, U.S. Atty., Raleigh, N.C., Lt. Col. Mark A. Steinbeck, Major Raymond J. Jennings, Jr., Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., on brief), for defendants-appellants.

Mark L. Waple, Hutchens & Waple, Fayetteville, N.C., for plaintiff-appellee.

Before ERVIN, Chief Judge, HILTON, District Judge for the Eastern District of Virginia, sitting by designation, and HALLANAN, District Judge for the Southern District of West Virginia, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Private Rigoberto Guerra brought suit against Col. Hugh F. Scruggs, Commanding Officer of the 7th Special Forces Group at Fort Bragg, and Michael Stone, Secretary of the Army, in the United States District Court for the Eastern District of North Carolina. He sought a temporary restraining order and a preliminary injunction to prevent his discharge from the Army. Guerra challenged the procedures by which Col. Scruggs decided to discharge Guerra with a general discharge discharge under honorable conditions for cocaine usage and absence from duty due to alcohol intoxication. Guerra alleged that the procedures violated the Due Process Clause and the Equal Protection Clause.

The district court first granted a temporary restraining order and then granted a preliminary injunction against the defendants, 747 F.Supp. 1160, enjoining them

from "discharging or separating plaintiff from active duty with the United States Army pending a disposition of this action on its merits or the granting of a meaningful hearing before the administrative elimination board pursuant to Army Regulation 635–200." Scruggs and Stone appealed from this order.

We find that the district court erred in granting the injunction in this case. Therefore, we reverse.

## I

Private Guerra was a member of D Company, 2d Battalion, 7th Special Forces Group (Airborne), stationed at Fort Bragg. He received the Army Achievement Medal on two occasions and was named as the "Soldier of the Year" for Fiscal Year 1990 in his military organization at Fort Bragg. However, on October 29, 1989, Guerra missed a P.T. formation due to alcohol intoxication. On April 23, 1990, Guerra tested positive for cocaine use. Guerra accepted nonjudicial punishment pursuant to Article 15 of the Uniform Code of Military Justice (UCMJ) for his cocaine use. The punishment was as follows: reduction in rank, 45 days restriction and extra duty, and forfeiture of one-half of his monthly basic pay for a period of two months.

Under Article 15, UCMJ, Guerra could have refused the nonjudicial proceedings and demanded trial by court-martial. Manual for Courts-Martial, United States, para. 3 (1984). If Guerra had made such a demand, he would have been entitled to a court-martial before any punishment could be imposed. Guerra did not demand a courtmartial. Rather, he voluntarily accepted proceedings under Article 15.

After the Article 15 proceedings were completed, Guerra received a notice of proposed separation from Captain Akers, Commanding Officer of D Company. Grounds for the proposed separation were the positive test for cocaine use and the missed P.T. formation due to alcohol intoxication.

Captain Akers stated that he would recommend a general discharge.

The notice of proposed separation informed Guerra of the following procedural rights:

5. You have the right to consult with a military counsel at no cost, and with civilian counsel at no expense to the Government within a reasonable time (not less than 3 duty days).

6. You may submit written statements in your behalf.

7. You may obtain copies of documents that will be sent to the separation authority supporting the proposed separation. (Classified documents may be summarized.)

In response to the notice of proposed separation, Guerra did not deny using cocaine, but instead pleaded that his mistake had been paid for by the Article 15 punishment. Guerra requested a hearing before an administrative elimination board. Because he had not served in the Army for at least 6 years, Guerra was not entitled to such a hearing. Army Reg. 635–200 § 2–2d (1989).

Guerra submitted ten statements from other soldiers in support of his plea of leniency. After reviewing these statements, Colonel Scruggs, Commanding Officer of the 7th Special Forces Group, approved the recommendation for a general discharge of Guerra.[1]

A person in Guerra's position has two avenues of appeal within the Army structure. First, he may appeal to the Army Discharge Review Board (ADRB) which was established pursuant to 10 U.S.C. § 1553 and Army Regulation 15–180. An applicant seeking relief from this board has an absolute right to a hearing before the board, and may be represented by counsel and present witnesses. *Chilcott v. Orr*, 747 F.2d 29, 32 (1st Cir.1984). The ADRB has authority to change a discharge or to issue a new discharge, but it does not have authority to reverse or vacate a discharge.

---

1. Army Regulations provide: "A general discharge is a separation from the Army under honorable conditions. When authorized it is issued to a soldier whose military record is satisfactory but not sufficiently meritorious to warrant an honorable discharge." Army Regulation 635–200, Section III, § 37b(1).

In addition, the ADRB has no authority to rule on constitutional challenges to the Army's regulations. Second, Guerra could appeal to the Army Board for Correction of Military Records (ABCMR) which was established pursuant to 10 U.S.C. § 1552 and Army Regulation 15–185. The ABCMR has statutory authority to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C.A. § 1552(a)(1) (1991 West Supp.). The ABCMR also "may, subject to review by the Secretary concerned, change a discharge or dismissal, or issue a new discharge, to reflect its findings." 10 U.S.C.A. § 1553(b) (1983). The ABCMR has authority to consider claims of constitutional, statutory, and regulatory violations. 32 C.F.R. § 581.3(c)(5)(v) (1990). Guerra did not use either of the above administrative procedures to challenge his discharge. Instead, he sought an injunction in the district court to prevent his discharge.

The district court granted a temporary restraining order and thereafter granted a preliminary injunction against Guerra's discharge. The court concluded that the balance of equities and the merits of the case supported a preliminary injunction. Scruggs and Stone appealed to this court from the district court's order granting the preliminary injunction. During the pendency of this appeal, by virtue of the preliminary injunction, Guerra continued to serve in the Army. On April 4, 1991, his original term of service expired and he was discharged. The classification of his discharge has not been finalized as it is contingent upon the outcome of this appeal.

## II

■ Normally, the trial court standard for injunctive relief is the balance-of-hardship test. *North Carolina State Ports Authority v. Dart Containerline Co.*, 592 F.2d 749, 750 (4th Cir.1979). There are four factors which enter into the determination of whether interim injunctive relief should be granted: (1) whether the plaintiff will suffer irreparable injury if interim relief is not granted; (2) the injury to the defendant if an injunction is issued; (3) the plaintiff's likelihood of success in the underlying dispute between the parties; and (4) the public interest. *Id.* at 750; *Jones v. Board of Governors of University of North Carolina*, 704 F.2d 713, 715 (4th Cir.1983).

### A

In *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the Supreme Court addressed the amount of irreparable harm which must be shown in the context of the discharge of a civilian employee. There, the Court stated that the lower courts were "quite wrong in routinely applying to [the] case the traditional standards governing more orthodox 'stays.' " *Id.* at 83–84, 94 S.Ct. at 950, 39 L.Ed.2d at 183. The Court explained its rationale:

> Although we do not hold that Congress has wholly foreclosed the granting of preliminary injunctive relief in such cases, we do believe that respondent at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases.

*Id.* at 84, 94 S.Ct. at 950, 39 L.Ed.2d at 183. Turning to the issue of irreparable harm in *Sampson*, the Court stated:

> Assuming for the purpose of discussion that respondent had made a satisfactory showing of loss of income and had supported the claim that her reputation would be damaged as a result of the challenged agency action, we think the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case.

*Id.* at 91–92, 94 S.Ct. at 953–54, 39 L.Ed.2d at 187. The Court noted in a footnote that there might be a circumstance where the discharge of a government employee, together with the resulting effects of the discharge, might meet the irreparable inju-

ry test. *Id.* at 92 n. 68, 94 S.Ct. 953 n. 68, 39 L.Ed.2d at 187 n. 68.

*Sampson* indicates that in the context of discharges of military employees, plaintiffs might likewise have an increased burden of showing irreparable injury. Other circuits have applied *Sampson* to military discharges in this way. *See Hartikka v. United States,* 754 F.2d 1516, 1518 (9th Cir.1985) (holding that *Sampson's* higher standard of irreparable injury applies to military personnel); *Chilcott v. Orr,* 747 F.2d 29, 33 (1st Cir.1984) (holding that the rule in *Sampson* should be applied to military personnel).

We believe that *Sampson's* higher requirement of irreparable injury should be applied in the military context given the federal courts' traditional reluctance to interfere with military matters. Therefore, Guerra must meet this higher standard in order to show that injunctive relief was proper in this case.

 In some decisions this court has modified the traditional four part balance-of-hardship test by stating that the court should first balance the hardships to the plaintiff and the defendant, and if that balance "tips decidedly in the plaintiff's favor, an injunction preserving the status quo should issue 'if, at least, grave or serious questions are presented.' " *Jones,* 704 F.2d at 715 (quoting *North Carolina State Ports,* 592 F.2d at 750). If we apply the *Sampson* higher standard of irreparable damage in this framework and the balance tips in favor of Guerra, then the injunction was properly granted in this case.

The district court found that Guerra would suffer irreparable harm if the injunction was not granted. The court noted that evidence showed that there would be an extended delay, perhaps as much as a couple of years, between Guerra's separation and a review, if any, by the ABCMR. The court further noted that the ABCMR rarely conducts hearings on applications before it and, therefore, Guerra might not get a hearing at all. In the interim, Guerra would be forced to seek civilian employment with a military record which carries a stigma with it. Based upon these findings,

the district court concluded that Guerra would suffer irreparable harm without the injunction.

We disagree with the district court's conclusion that Guerra would suffer irreparable harm without the injunction. Instead, we are persuaded by the reasoning of the First Circuit in *Chilcott v. Orr,* 747 F.2d 29 (1st Cir.1984). There, Chilcott challenged his pending discharge from the Air Force based on his arrest for selling LSD. The district court granted a preliminary injunction based on the irreparable harm to Chilcott; however, the First Circuit reversed. The court first considered the harm that Chilcott would suffer, explaining:

> Chilcott contends that he will be irreparably harmed if he receives a general discharge under honorable conditions. He argues that anything less than an honorable discharge will stigmatize him and jeopardize his future employment opportunities. Of course, post-discharge remedies are available in the Air Force that could result in his discharge being upgraded to honorable, if the Air Force Discharge Review Board determines that the general discharge was improper. The only conceivable harm that Chilcott could suffer is the damage to his reputation and the stigma that would occur between the time of his discharge and the decision of the Discharge Review Board. The question we are faced with is whether the harm is so great as to justify an interference with Air Force procedures.

*Id.* at 33. The First Circuit then held that "the prospect of a general discharge under honorable conditions is not an injury of sufficient magnitude to warrant an injunction." *Id.* at 34. *See also Hartikka,* 754 F.2d at 1518 (holding that loss of income and damage to reputation resulting from the stigma of a less than honorable discharge were insufficient under *Sampson* to justify injunctive relief).

We agree with the First Circuit's holding in *Chilcott.* Here, the only harm Guerra could suffer is the damage to his reputation during the interim between his discharge and the decision of the board re-

viewing his discharge. Such an injury does not rise to the *Sampson* level of irreparable injury justifying an injunction. Therefore, we conclude that Guerra would not suffer irreparable harm if an injunction was not granted in this case.

## B

We now turn to the harm to the Army which would be caused by the issuance of an injunction. The district court found that the harm to the Army would not be great because hearings would only be required in cases where a person's liberty or property interest was deprived. Further, the due process clause does not require full blown evidentiary hearings in every case where a liberty or property right has been infringed upon. As a result, the district court held that the harm to the Army was not too great. Weighed against the irreparable harm to Guerra, the court held that the balance tipped in Guerra's favor.

We disagree with the district court. The harm to the Army is greater than it first appears. If we upheld the injunction granted under the facts before us, injunctions would be routinely sought in drug discharge cases. The result would be judicial second-guessing of a kind that courts have been reluctant to engage in. Here, Guerra did not contest his drug use but instead wanted the Army, in the exercise of its discretion, to refrain from discharging him in spite of his admitted drug use.[2] This is the type of discretionary decision best left to the military. We cannot predict the effect on the Army of retaining admitted drug users in specific Army units. To start second-guessing the military under these circumstances "would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." *Orloff v. Willoughby*, 345 U.S. 83, 95, 73 S.Ct. 534, 540, 97 L.Ed. 842, 850 (1953). We conclude that the harm to the Army would be substantial if we upheld this injunction.

**2.** We note that the Army does have discretion to retain soldiers who have tested positive for drug

After looking at the balance of harms to the parties, the balance tips in favor of the Army. If the injunction is granted, Guerra will not suffer irreparable harm, yet the Army will suffer substantial harm in this circumstance. There remain two other prongs of the four-part equity test which we must consider. *See Jones*, 704 F.2d at 715. Those factors are the plaintiff's likelihood of success in the underlying dispute and the public interest. *See id.*

## C

When considering the plaintiff's likelihood of success, we must first decide whether the district court would refuse to resolve the issues before it due to the amount of deference normally accorded to the military with respect to its internal procedures. In *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), the Supreme Court described the need for deference to the military as follows.

> The military is "a specialized society separate from civilian society" with "laws and traditions of its own [developed] during its long history." *Parker v. Levy*, 417 U.S. 733, at 743, 94 S.Ct. 2547 at 2556, 41 L.Ed.2d 439 (1974). Moreover, "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise." *Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). To prepare for and perform its vital role, the military must insist upon a respect for duty and a discipline without counterpart in civilian life. The laws and traditions governing that discipline have a long history; but they are founded on unique military exigencies as powerful now as in the past. Their contemporary vitality repeatedly has been recognized by Congress.

*Id.* 420 U.S. at 757, 95 S.Ct. at 1312, 43 L.Ed.2d at 608–09. The Fifth Circuit addressed the issue of deference to the military in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971), where it explained:

use. *See* Army Reg. 635–200 ch. 9 (1990).

Traditional trepidation over interfering with the military establishment has been strongly manifested in an unwillingness to second-guess judgments requiring military expertise and in a reluctance to substitute court orders for discretionary military decisions. Concern has also been voiced that the courts would be inundated with servicemen's complaints should the doors of reviewability be opened. But the greater reluctance to accord judicial review has stemmed from the proper concern that such review might stultify the military in the performance of its vital mission.

*Id.* at 199. In *Mindes*, the Fifth Circuit set out a framework for determining whether a court should review a military decision. First, there must be an "allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations." *Id.* at 201. Second, the plaintiff must have exhausted the "available intraservice corrective measures." *Id.*

If these two threshold requirements are met, then the court should use a four-part test balancing:

"1. The nature and strength of the plaintiff's challenge to the military determination....

2. The potential injury to the plaintiff if review is refused.

3. The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief.

4. The extent to which the exercise of military expertise or discretion is involved. Courts should defer to the superior knowledge and expertise of professionals in matters such as promotions or orders directly related to specific military functions."

*Id.* at 201–02. This court adopted the *Mindes* framework in *Williams v. Wilson*, 762 F.2d 357 (4th Cir.1985). Therefore, we must analyze Guerra's chances of success on his claims using the *Mindes* framework.

Guerra raises Due Process and Equal Protection challenges to the procedures under which the Army sought to discharge him. Therefore, Guerra meets the first threshold requirement of *Mindes*.

The second threshold requirement is exhaustion of intraservice remedies. The doctrine of requiring exhaustion of administrative remedies has been long established. *See Cole v. Spear*, 747 F.2d 217, 220 (4th Cir.1984). This doctrine applies to cases like the present one where constitutional claims are made. *See American Fed. of Government Employees, AFL–CIO v. Nimmo*, 711 F.2d 28, 31 (4th Cir. 1983) ("[R]equiring exhaustion is particularly appropriate when the administrative remedy may eliminate the necessity to decide constitutional questions."); *Thetford Properties IV Ltd. Partnership v. U.S. Dep't of Hous. and Urban Dev.*, 907 F.2d 445, 448 (4th Cir.1990) (noting that the exhaustion principle is nothing more than a corollary to the rule of judicial restraint that a court should not pass on constitutional questions unless it is unavoidable).

There is an exception to the exhaustion requirement which this court has recognized. If the outcome would "predictably be futile," the doctrine of exhaustion will not apply. *Dooley v. Ploger*, 491 F.2d 608, 614–15 (4th Cir.1974). Guerra argues that the outcome of the intraservice remedies is predictably futile in his case due to the lack of a guaranteed hearing before the ABCMR. Guerra also asserts that neither of the boards are empowered to grant him a portion of the relief he seeks: Guerra asks that he not be discharged despite the fact that he once used cocaine.[3] In addition, Guerra points to a recent finding by the ABCMR as support for his position that an administrative appeal would be futile. Apparently, Guerra's counsel challenged

---

**3.** We note that this issue is now moot as the term of Guerra's original enlistment ended during the pendency of this appeal on April 4, 1991.

the six year hearing rule before the ABCMR based on *May v. Gray*, 708 F.Supp. 716, 720 (E.D.N.C.1988), where the court questioned the rationality of the six year requirement. The ABCMR made a finding that

> Notwithstanding *May v. Gray*, the separation of soldiers with less than six years of service under the notification procedure of AR 635–200 and DOD Directive 1332.14 has not been held to be unconstitutional.

This court has addressed the issue of the exhaustion requirement in a couple of relevant cases. In *Williams v. Wilson*, we held that the inability of the board to give the plaintiff all the relief he seeks does not automatically excuse the failure to exhaust. 762 F.2d at 360 n. 6. We explained:

> While the ABCMR lacks authority to order the West Virginia Army National Guard to reinstate Williams were it to find in his favor, it would have the power to correct Williams' federal records to show that his federal recognition has not been withdrawn, reinstate Williams in a comparable active federal reserve status, restore his pay and order compensatory back pay.

*Id.*

In *Sanders v. McCrady*, 537 F.2d 1199, 1201 (4th Cir.1976), we also held that the board's inability to grant the plaintiff full relief was not dispositive on the issue of exhaustion. *Id.* There, the plaintiff had been accused of cheating at a military school. In addition we held that the consequence of delay for Sanders—the postponement of his opportunity to obtain damages and fees—was outweighed by the considerations of efficiency and agency expertise underlying the exhaustion requirement. *Id.*

In *United States ex rel. Brooks v. Clifford*, 412 F.2d 1137, 1139–41 (4th Cir.1969), we held that a soldier did not have to exhaust his administrative remedies. There, the soldier was petitioning for a writ of habeas corpus on the ground that he was a conscientious objector. We found that Brooks' remedy before the ABCMR was inadequate because he would be re-

quired to litigate administratively, all the while being required to engage in conduct inimical to his conscience. *Id.* at 1141.

We find that the facts in the present case more closely resemble the facts in *Williams* and *Sanders* where we required exhaustion than those in *Clifford* where we did not. In this case as in *Sanders*, the consequence of delay for Guerra—postponement of his ability to obtain damages—is outweighed by the considerations of efficiency and agency expertise in requiring exhaustion. Lacking in this case are factors such as those present in *Clifford*. There, the effect of delay was greater than a delay seeking damages: the soldier would have been required to violate his own conscience throughout the delay. We find no such dire consequence present in the facts before us and therefore hold that Guerra should have exhausted his administrative remedies in this case. As a result, Guerra has no likelihood of success on the merits of his case because he has failed to exhaust his administrative remedies. This factor thus weighs against granting an injunction in this case.

█ Even if we were to overlook the threshold exhaustion requirement of *Mindes*, we would then engage in the *Mindes* four-part balancing test, and Guerra fares no better under it.

The first factor to be considered is the nature and strength of Guerra's challenge to the military determination. *Mindes*, 453 F.2d at 201–02. Guerra raises essentially two constitutional challenges: (1) a Due Process challenge, and (2) an Equal Protection challenge. We will address each in turn.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18, 31 (1976). Thus, in order for Guerra to have a Due Process claim, he must first establish that he has a property or liberty interest.

■ The district court found that Guerra did not have a property interest. Property interests are

... created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). In *Perry v. Sindermann,* the Supreme Court stated that a property right cannot emanate from a mere subjective expectancy. 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, 580 (1972).

■] Here, the statute on which Guerra relies to create a property interest shows that it does not create one. 10 U.S.C. § 1169 provides:

No regular enlisted member of an armed force may be discharged before his term of service expires, except—

(1) as prescribed by the Secretary concerned;

(2) by sentence of a general or special court martial; or

(3) as otherwise provided by law.

10 U.S.C.A. § 1169 (1983). The language of the statute, particularly subsection (1), shows that the Army has discretion to discharge enlisted personnel and that Guerra has no property interest. *See Rich v. Secretary of Army,* 735 F.2d 1220, 1226 (10th Cir.1984) (holding that Rich had no property right in continued employment with the Army because of the discretion afforded the Secretary under 10 U.S.C. § 1169(1)). Further, even if we found that Guerra had a property interest at one time, we note that he would no longer have a property interest because his term of enlistment has now expired.

■ Although Guerra does not have a property interest, the district court found that he did have a liberty interest which afforded him due process rights. "Liberty" as referred to in the Due Process Clause of the Fourteenth Amendment includes the right of "an individual to contract, to engage in any of the common

occupations of life, to acquire useful knowledge ... and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." *Roth,* 408 U.S. at 572, 92 S.Ct. at 2707, 33 L.Ed.2d at 548 (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045). From the broad notion of liberty has sprung the concept that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515, 519 (1971). The purpose of such notice and hearing is to provide the person an opportunity to clear his name. *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92, 96 (1977).

■ In the abstract, Guerra might have a liberty interest in his good name. The stigma attached to a general discharge related to a drug offense is well documented. *See Casey v. United States,* 8 Cl.Ct. 234, 242–43 (1985) (holding that a discharge for "personal abuse of alcohol and other drugs" was stigmatizing). However, merely having a liberty interest in one's good name does not make out a claim of a Due Process violation. "A critical element of a claimed invasion of a reputational liberty interest ... is the *falsity* of the government's asserted basis for the employment decision at issue." *Doe v. Garrett,* 903 F.2d 1455, 1462–63 (11th Cir.1990); *accord Sims v. Fox,* 505 F.2d 857, 864 (5th Cir. 1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975) (holding that the government does not infringe upon a person's liberty unless it perpetuates untrue charges); *Rich v. Secretary of Army,* 735 F.2d 1220, 1227 (10th Cir.1984) (holding that in order to make a showing of liberty deprivation, the employee must show that the dismissal resulted in the publication of false and stigmatizing information). Here, Guerra never denied that he had used cocaine. In fact, he voluntarily underwent disciplinary procedures under Article 15 without demanding a court-martial to contest the drug test results. Therefore, Gu-

erra has failed to make out an essential element of his Due Process claim: he cannot show that the stated reason for his discharge—cocaine use—was untrue. Thus, we find that Guerra had no liberty interest.

To summarize, Guerra would not likely succeed on the merits of his Due Process claim for two reasons. First, he has no property interest. Second, he had no liberty interest because while he had an interest in his good name, this interest was not infringed upon by the Army's proposed discharge for cocaine use.

 Guerra also raised an Equal Protection claim challenging the requirement that a serviceman must serve in the Army for 6 years before being entitled to a hearing before the ABCMR. *See* Army Reg. 635–200 § 2–2d (1989). Guerra asserted that the 6 year requirement bears no rational relationship to a legitimate government objective and that it is arbitrary and capricious. Unless a statute or regulation impinges upon a fundamental right or involves a suspect classification, a minimal level of scrutiny is applied under the rational basis test. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16, 33 (1973). Since no fundamental right or suspect classification is involved here, we must apply the rational basis test.

 Under the rational basis test, a regulation need only bear some rational relationship to legitimate governmental purposes. *See id.* at 40, 93 S.Ct. at 1300, 36 L.Ed.2d at 47. The deference afforded to the government under the rational basis test is so deferential that even if the government's actual purpose in creating classifications is not rational, a court can uphold the regulation if the court can *envision* some rational basis for the classification. In *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Supreme Court stated that "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Id.* at 426, 81 S.Ct. at 1105, 6 L.Ed.2d at 399.

In the case at bar, the Army explained the reason for the 6 year requirement as follows:

> Six years is the maximum enlistment in the United States Army. So any soldier who has served beyond six years is by definition serving beyond his initial tour of enlistment ...
> [T]he rights of the procedures that are afforded to those soldiers are not a recognition they possess a property right to continue service in the military, but merely out of the fact that they have served beyond that initial enlistment period.
> We are saying that we will afford these soldiers because of their term of service these procedures when they are considered for administrative elimination or separation from the service. And secondly, as expressed in AR 635–200 in its purpose paragraph, it is for the purpose of maintaining the readiness and the competence of a fighting force.
> The Army has an investment by virtue of the time and the training possessed and invested in that soldier who serves six years or more. So it is not all for the soldier; it is there too to protect the investment of the service, again, a rational basis for determining what procedures are afforded to who [sic].

Under the exceedingly deferential rational basis test, this stated purpose of the 6 year classification is rational and does not violate the Equal Protection Clause.

The first factor in the *Mindes* balancing test, the nature and strength of Guerra's challenge to the Army regulation, weighs in favor of this court not granting relief to Guerra. Guerra has no Due Process claim against the Army and cannot succeed on his Equal Protection claim. As a result, this first factor indicates that we should not grant Guerra any relief.

The second *Mindes* factor is the potential injury to plaintiff if review is refused. The above discussion regarding irreparable harm sets out the harm to Guerra in great detail and need not be repeated here. This factor weighs against granting relief to Guerra.

The third *Mindes* factor is the type and degree of anticipated interference with the military function. In *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Supreme Court explained the need for discipline and duty in the military as follows.

> The inescapable demands of military discipline and obedience to order cannot be taught on battlefields; the habit of immediate compliance with military procedures and orders must be virtually reflex with no time for debate or reflection.... This becomes imperative in combat, but conduct in combat inevitably reflects the training that precedes combat; for that reason, centuries of experience has [sic] developed a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns. Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment.

*Id.* at 300, 103 S.Ct. at 2365–66, 76 L.Ed.2d at 590–91. The Court further explained that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have. *Id.* at 305, 103 S.Ct. at 2368, 76 L.Ed.2d at 593–94; *accord Horn v. Schlesinger*, 514 F.2d 549, 553 (8th Cir.1975) (noting that in situations involving challenges to retention and promotion of personnel, federal courts "are in an area involving judgments as to military character, a field foreign to [federal courts'] normal competence").

Guerra's proposed discharge was at the request of Captain Akers, who was the commanding officer of Guerra's Company D. Apparently, he believed that Guerra's actions could not be tolerated in the military context. While we might conclude that the Army should forgive Guerra and give him a second chance, we are not in a position to evaluate how this type of behavior impacts on a military unit, especially a special forces unit. As a result, this third factor in *Mindes* balances against granting any relief to Guerra.

The final *Mindes* factor is the extent to which the exercise of military expertise or discretion is involved. Guerra's request for a hearing emphasizes the fact that what is required in this case is the exercise of military discretion. Guerra wants the Army to exercise its discretion and not discharge him despite his admitted drug use. He is seeking a board hearing so that *three* officers will make the decision whether to exercise that discretion rather than one. His request shows that this decision squarely falls within the discretion of the military and is not a process into which courts should interject themselves. Therefore, we conclude that this fourth *Mindes* factor weighs against granting Guerra any relief.

To summarize, all four of the *Mindes* factors weigh against granting Guerra any relief on the merits of his claims. Therefore, under the *Mindes* test, we should defer to the military.

Returning to the four-part balance of equities test, we conclude that Guerra has no likelihood of success on the merits of his claim. Thus, this third prong of the balance of equities weighs against granting an injunction in this case.

### D

The final factor to be considered in the balance of equities test is the public interest. We conclude that this factor weighs against granting injunctive relief for the reasons stated above regarding deference to the military in matters of discipline.

### III

▮ Under the balance of equities test, we have considered the four factors and conclude that they all weigh against injunctive relief in this case. First, Guerra will not suffer irreparable harm if no injunction is granted. Second, the Army will suffer great harm as the result of an injunction. Third, Guerra will not likely succeed on the merits of his case based on: (1) his failure

to exhaust administrative remedies; (2) his failure to show that he was deprived of any liberty interest; and (3) his failure to show that he was denied equal protection of the laws. Fourth, the public interest weighs against injunctive relief in this case. All four balance of equities factors weigh against injunctive relief, and therefore we conclude that the district court should not have granted an injunction on these facts. Accordingly, we reverse the district court's order granting the injunction.

REVERSED.