**Harold McBRIDE, Jr., Sergeant, United States Army, Plaintiff,**

v.

**The Honorable Togo P. WEST, Secretary of the United States Army, in his official capacity; and his respective representatives and successors, Defendant.**

No. 5:96–CV–363–BO(1).

United States District Court, E.D. North Carolina, Western Division.

Sept. 20, 1996.

894

Mark L. Waple, Waple & McRorie, Fayetteville, NC, for plaintiff.

Fenita T. Morris, Assistant U.S. Attorney, Civil Division, Raleigh, NC, for defendant.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter comes before the Court on defendant's motion to dismiss. Plaintiff, alleging a variety of constitutional and statutory violations, has petitioned this Court for two forms of relief: 1) a preliminary injunction preventing the United States Army from discharging him, and 2) an order from this Court that plaintiff's waiver of his right to trial by court-martial was void for lack of voluntariness. For the reasons discussed below, defendant's motion to dismiss is granted.

### I. Statement of the Case

Plaintiff, Harold McBride, Jr., is a Sergeant in the United States Army, currently serving at Fort Bragg, North Carolina. At the time of the filing of this action, on April 30, 1996, plaintiff had approximately 17 years, 8 months of creditable active duty service.

On May 2, 1995, plaintiff, while serving at "Joint Task Force 6," [1] allegedly committed two violations of the Uniform Code of Military Justice (UCMJ): 1) plaintiff allegedly went to Mexico even though he had been told by a superior that it was "off limits," in violation of Article 92 of the UCMJ, and 2) plaintiff allegedly wrongfully appropriated a military jeep, in violation of Article 121 of the UCMJ.

On June 8, 1995, plaintiff was informed by his battalion commander that plaintiff could accept nonjudicial punishment for the alleged misconduct, under Article 15 of the UCMJ (10 U.S.C. § 815), in lieu of proceeding with a trial by court-martial. The apparent advantage of accepting nonjudicial punishment under Article 15 is that there is a statutory ceiling on the possible punishments that can be administered. Plaintiff, by his own admission, was then instructed by his battalion commander "to seek legal advice concerning whether I should accept nonjudicial punishment or decline nonjudicial punishment and that an appointment to receive legal counseling from a military attorney had already been arranged." (Plaintiff's Affidavit).

On that same day, June 8, plaintiff went to the trial defense office at Fort Bragg, North Carolina, and, before meeting with a military attorney, plaintiff was provided with a form which explained the possible nonjudicial punishments under Article 15. One of the punishments listed on the form is a reduction in rank of one military grade. Plaintiff then met with a military attorney, and the two of them discussed the possible punishments that were listed on the form. Plaintiff was again informed that he was not obliged to

1. Plaintiff was temporarily stationed somewhere near San Diego, California.

accept nonjudicial punishment under Article 15 and that he had the right to a trial by court-martial. "The military attorney who advised me concerning the Article 15 explained to me that I had the right to decline the nonjudicial punishment and that I had the right to proceed to a trial by court-martial." (Plaintiff's Affidavit).

On June 13, plaintiff appeared before his battalion commander and agreed to accept nonjudicial punishment and to forego a trial by court-martial. The battalion commander found plaintiff guilty of the alleged misconduct, and the punishment administered included a reduction in plaintiff's military grade from Staff Sergeant (E–6), to Sergeant (E–5). Plaintiff then appealed his Article 15 punishment to Colonel Ranger Roach, and plaintiff requested that his reduction in military grade be nullified. Colonel Roach denied plaintiff's appeal on June 16, 1995.

As a result of plaintiff's reduction in military grade from E–6 to E–5, the Army now seeks to discharge plaintiff for exceeding what is called a Retention Control Point (RCP). Apparently, the Assistant Secretary of the Army, exercising authority delegated by the Secretary of the Army, and pursuant to 10 U.S.C. § 1169, Army Regulation 635–200, paragraph 16–8, has implemented what is called the Enlisted Qualitative Early Separation Program (EQESP), which provides for honorable discharge of certain classes of Army personnel prior to the expiration of their normal terms of service. According to the plaintiff's characterization of EQESP, "active duty Army noncommissioned officers in the military pay grade of Sergeant (E–5) who exceeded a total of 13 years of active military service ... would be involuntarily separated from active duty as being beyond an active duty Retention Control Point ..." (Plaintiff's Complaint, p. 5).

Plaintiff does not contest the Army's statutory authority to dismiss soldiers who have exceeded their Retention Control Point under the EQESP. Rather, plaintiff contends that his waiver of a right to trial by court-martial was not knowing and intelligent because the military attorney with whom plaintiff discussed the possible nonjudicial punishments under Article 15 of the UCMJ did not tell plaintiff that a possible consequence of his reduction in military grade from E–6 to E–5 would be involuntary honorable discharge from the Army for exceeding the Retention Control Point. Plaintiff argues that because his eligibility for involuntary discharge under the EQESP is a direct result of his nonjudicial punishment under Article 15, the Army's efforts to now discharge him can only be characterized as *a part of*— and not incidental to—the punishment. Plaintiff claims that his waiver of a right to trial by court-martial was therefore not knowing and intelligent, in violation of his statutory and constitutional rights to counsel and trial, since he was not adequately informed of the possible punishments he could receive as a result of his voluntary waiver. Plaintiff also claims that the Army's efforts to discharge him are a violation of its statutory powers under Article 15 of the UCMJ, since the possible punishments under Article 15 do not include discharge from the Army.

Plaintiff was informed by his command that the Army intended to discharge him on May 3, 1996. On April 30, 1996, plaintiff filed an action for a temporary restraining order and preliminary injunction. On May 1, 1996, by consent of the parties, the application for a temporary restraining order was withdrawn. On May 14, 1996, defendant filed a motion to dismiss. Defendant has voluntarily stayed plaintiff's discharge pending the outcome of this hearing. (Defendant's Response to Motion for Preliminary Injunction and Defendant's Motion to Dismiss, p. 9).

## II. Preliminary Injunctive Relief

In determining whether a plaintiff is entitled to preliminary injunctive relief, a District Court, under the familiar "balance-of-hardship" test, must consider four factors: (1) whether the plaintiff will suffer irreparable harm if the injunction is not granted; (2) the injury to the defendant if the injunction is issued; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. *North Carolina State Ports Authority v. Dart Containerline Co.,* 592 F.2d 749, 750 (4th Cir.1979); *Jones v. Board of Governors of University of North Carolina,* 704 F.2d 713, 715 (4th Cir.1983). If, after weighing

these four factors, the District Court determines that the balance tips in favor of the plaintiff, then the preliminary injunction should be granted.

### A.

The first factor in the balance of hardship test is whether the plaintiff will suffer irreparable harm. In *Guerra v. Scruggs*, the Fourth Circuit, consistent with the Ninth Circuit's holding in *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir.1985), and the First Circuit's holding in *Chilcott v. Orr*, 747 F.2d 29, 33 (1st Cir.1984), held that when a member of the military seeks a preliminary injunction preventing the military from discharging him, the plaintiff must satisfy a higher standard of irreparable harm than in the non-military context, "given the federal courts' traditional reluctance to interfere with military matters." *Guerra*, 942 F.2d 270, 274 (4th Cir.1991).

■ Plaintiff in this case argues that if a preliminary injunction is not granted, he will lose both his job and his eligibility for retirement benefits. While this is true, the harm that plaintiff will suffer as a result of his discharge is not sufficiently great, under *Guerra*, to tip the balance of hardship in plaintiff's favor.

In *Guerra*, plaintiff faced not only the loss of a job but also the stigma that attaches to a "general discharge." Since the plaintiff in *Guerra* had the right to appeal his case to the Army Board for Correction of Military Records (ABCMR)—as the plaintiff has the right to do in this case—the Fourth Circuit held that "the only harm Guerra could suffer is the damage to his reputation during the interim between his discharge and the decision of the board reviewing his discharge," and concluded, contrary to the District Court in that case, that "Guerra would not suffer irreparable harm if an injunction was not granted...." *Guerra*, at 274–75. Apparently, the Fourth Circuit completely discounted the hardship plaintiff would suffer as a result of his loss of income, as well as the hardship plaintiff would suffer in the course of seeking civilian employment with a less than illustrious military record.

The plaintiff in the instant case faces an *honorable* discharge, which puts him in a better position than the plaintiff in *Guerra*, who, despite the damage to his reputation that would result from a general discharge, was still not granted an injunction. It is true that the plaintiff in this case risks the loss of retirement benefits, which were not at issue in *Guerra*, but the loss of plaintiff's right to future benefits, like the loss of plaintiff's job, is not irreparable, for if plaintiff is successful in his appeal to the ABCMR, he will regain both.

### B.

■ The second factor in the balance-of-hardship test is the likelihood of harm to the defendant if the injunction is granted. In *Guerra*, the Fourth Circuit expressed understandable concern that if plaintiff's request for an injunction was granted, the Army would suffer significant harm, for "injunctions would be routinely sought in drug discharge cases. The result would be judicial second-guessing of a kind that courts have been reluctant to engage in." *Guerra*, at 275.

The Fourth Circuit's fears in *Guerra* are equally applicable here, for if plaintiff's request for an injunction is granted, then the United States Armed Forces will be subject to similar suits for preliminary injunctions in the future whenever military personnel, prior to voluntarily waiving their right to trial by court-martial, are not informed by counsel of all incidental effects of the possible nonjudicial punishments under Article 15. Whenever a soldier has been punished, and, as a result of his new status, suddenly finds himself without property or privileges or some degree of liberty to which he was formerly entitled, he could henceforth claim, with some support, that he did not knowingly and intelligently waive his right to trial by court-martial and request that a federal District Court intervene on his behalf. Requests for injunctions against the military would become a matter of course, not the rare exceptions that they should be, and the military's right to discipline its personnel without unnecessary interference by the Federal Courts would be seriously threatened.

### C.

■ The third factor in the balance-of-hardship test is the plaintiff's likelihood of success on the merits of his complaint. The Fourth Circuit, following the example of the Fifth Circuit in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971), has set forth a two-part test for determining the plaintiff's likelihood of success on the merits, the second part of which is dispensable if the first part is dispositive. *Guerra*, at 275–76. The first part of the test has two prongs, both of which plaintiff must satisfy. First, plaintiff must have alleged either a deprivation of a constitutional right, or that the military has committed statutory or regulatory violations. *Guerra*, at 276 (quoting *Mindes*, at 201). Plaintiff in this case has satisfied the first prong.

■ Second, "plaintiff must have exhausted the 'available intraservice corrective measures'." *Id.* at 276 (quoting *Mindes*, at 201). Plaintiff fails to satisfy this requirement because he has yet to appeal his case to the ABCMR, an administrative body established by the Secretary of the Army pursuant to 10 U.S.C. § 1552, which is authorized to recommend that the Secretary of the Army correct military records when error or injustice has been shown. (Declaration of David R. Kinneer, Executive Director of the ABCMR, p. 1). As the Fourth Circuit noted in *Guerra*, the ABCMR " 'may, subject to review by the Secretary concerned, change a discharge or dismissal, or issue a new discharge, to reflect its findings,' " *Id.* at 273 (citing 10 U.S.C.A. § 1553(b) (1983)), and "has authority to consider claims of constitutional, statutory, and regulatory violations." *Id.* at 273 (citing 32 C.F.R. § 581.3(c)(5)(v) (1990)). Further, the Court in *Guerra* held that the delay plaintiff might suffer between his discharge, and the ABCMR's review of his case, "was outweighed by the considerations of efficiency and agency expertise underlying the exhaustion requirement." Id. at 277. Because plaintiff has failed to satisfy the second prong of the first part of the *Mindes* test, plaintiff has failed to show a likelihood of success on the merits sufficiently strong, under *Guerra*, to merit relief.

### D.

■ The fourth and final factor of the balance-of-hardship test is the public interest. The interest of the public in allowing the military, in an orderly fashion, to fully adjudicate claims on the part of its own personnel, free of unnecessary interference by the federal courts, tips the balance-of-hardship test completely in the defendant's favor.

### III.

■ Plaintiff has also petitioned this Court for an order declaring that plaintiff's waiver of his right to trial by court-martial was void for lack of voluntariness. The Court will not grant this request for two reasons: first, and most important, plaintiff has yet to fully avail himself of available administrative remedies, and it is not the business of this Court to preempt the military's internal procedures—statutorily authorized—for reviewing discharges of its personnel.

■ Second, the plaintiff's claim in this case, that he did not knowingly and intelligently waive his right to trial by court-martial because he was not informed of the possible nonjudicial punishments under Article 15, is not sufficiently compelling to merit serious consideration. The reduction of plaintiff's military grade from Staff Sergeant (E–6) to Sergeant (E–5), an appropriate punishment under Article 15 of the UCMJ, may have been the cause-in-fact of plaintiff's pending discharge from the Army, but this does not mean that the discharge is an *aspect of* the punishment. Plaintiff, by his own admission, was fully informed of his right to proceed with a trial by court-martial, and he was fully aware of the possible punishments *under Article 15 of the UCMJ*. Plaintiff did not have a right, under either the Constitution or the Uniform Code of Military Justice, to be informed of every possible consequence that might occur *after his punishment was administered*. Plaintiff's waiver of his right to trial by court-martial was fully informed, and this Court will not issue an order to the contrary.

\*     \*     \*

For the foregoing reasons, defendant's motion to dismiss is granted.

SO ORDERED.