**ON REHEARING EN BANC**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FREDERICK AIKENS,

       *Plaintiff-Appellant,*

       v.

WILLIAM E. INGRAM, JR.,
individually and in his capacity as
Adjutant General of the North
Carolina Army National Guard;
PETER VON JESS, individually and in
his capacity as Lieutenant Colonel
of the North Carolina National
Guard; BRIAN MCCARTHY,
individually and in his capacity as
a member of the North Carolina
Army National Guard; PAUL JONES,
individually and in his capacity as
a member of the North Carolina
Army National Guard,

       *Defendants-Appellees.*

No. 08-2278

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Dever III, District Judge.
(5:06-cv-00185-D)

Argued: March 24, 2011

Decided: July 13, 2011

Before TRAXLER, Chief Judge, and WILKINSON, NIEMEYER, MOTZ, KING, GREGORY, SHEDD, DUNCAN, AGEE, DAVIS, KEENAN, and DIAZ, Circuit Judges.[1]

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Chief Judge Traxler and Judges Wilkinson, Shedd, Duncan, Agee, and Diaz joined. Judge Diaz wrote a concurring opinion in which Judges Shedd, Duncan, and Agee joined. Judge King wrote a dissenting opinion in which Judges Motz, Gregory, Davis, and Keenan joined. Judge Davis wrote a separate dissenting opinion.

---

## COUNSEL

**ARGUED:** William Woodward Webb, Sr., EDMISTEN & WEBB, Raleigh, North Carolina, for Appellant. John Foster Maddrey, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF**: William Woodward Webb, Jr., EDMISTEN & WEBB, Raleigh, North Carolina, for Appellant. Roy Cooper, North Carolina Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

---

[1]Judge Wynn did not sit with the *en banc* court or participate in this decision.

## OPINION

NIEMEYER, Circuit Judge:

Frederick Aikens, formerly a colonel in the North Carolina Army National Guard, commenced this action against his former colleagues, Adjutant General William Ingram and Lieutenant Colonel Peter von Jess, alleging that they violated his Fourth Amendment rights by wrongfully intercepting, reading, and forwarding his e-mails while he was deployed in Kuwait. The district court dismissed the action without prejudice, concluding that it lacked subject matter jurisdiction because of Colonel Aikens' failure to exhaust any available intra-military remedies. The court entered a judgment of dismissal on September 14, 2007.

Although Colonel Aikens held the firm belief that the district court had erred, he did not appeal, nor did he seek a stay to assure the district court's continuing jurisdiction over the matter. Aikens did file his claim with the Army Board for Correction of Military Records ("ABCMR"), but then, when the Board determined that it could not provide him with the relief that he sought, he did not file another action in the district court. Rather, he sought to reopen the September 14, 2007 judgment by filing a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6), several months after that action had become final and unappealable. The district court denied the Rule 60(b)(6) motion in the exercise of its discretion, reasoning that Colonel Aikens had failed to establish the extraordinary circumstances necessary under Rule 60(b)(6) for granting relief from the September 14, 2007 judgment.

For the reasons that follow, we conclude that the district court did not abuse its discretion and thus affirm.

I

After Frederick Aikens was promoted to colonel in the North Carolina Army National Guard, Lieutenant Colonel

Peter von Jess was selected to replace him as executive officer of the 139th Rear Operations Center. Shortly thereafter, Colonel Aikens began receiving complaints about von Jess from subordinate field officers, leading Aikens to discipline von Jess in a July 2002 officer evaluation report. Aikens reiterated that evaluation in a December 2002 evaluation report. Adjutant General William Ingram, who had selected von Jess to replace Aikens as executive officer, invalidated Colonel Aikens' evaluation of von Jess, which provoked Colonel Aikens to file a complaint for undue command influence with the Department of the Army Inspector General. The Inspector General substantiated Aikens' complaint.

According to Aikens, when he was later deployed to Kuwait in April 2003, two of his subordinate officers, under instructions from General Ingram, illegally monitored and intercepted his personal e-mails from a computer system they had set up for him. These e-mails contained personal correspondence, including negative statements about General Ingram and others.

Thereafter, General Ingram ordered two separate investigations of Aikens, one in December 2003 and another in February 2004, both of which were later determined to be unsubstantiated. But Colonel Aikens was later notified by the Inspector General that he was the subject of yet another investigation for a "hostile command climate and inappropriate relations with women." These charges were substantiated in part by use of the intercepted e-mails. Colonel Aikens asserts that as a result of the third investigation he resigned from the North Carolina National Guard in June 2005 and that his resignation amounted to constructive discharge from the United States Army. After his resignation, he was transferred to the Retired Reserve.

Colonel Aikens commenced this action against General Ingram and Lieutenant Colonel von Jess, contending that the defendants violated his Fourth Amendment rights and Army

Regulation 380-19. General Ingram and Lieutenant von Jess filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the district court lacked subject matter jurisdiction because Colonel Aikens had failed to exhaust his intra-service military remedies through the ABCMR. Aikens responded, arguing that exhaustion was unnecessary because the ABCMR could not address Fourth Amendment violations and that General Ingram and Lieutenant von Jess were, in any event, state actors, not a federal agency subject to the ABCMR.

The district court granted the motion without prejudice, directing Aikens to exhaust his intra-service administrative remedies with the ABCMR. *Aikens v. Ingram*, 513 F. Supp. 2d 586 (E.D.N.C. 2007). The court noted that Colonel Aikens' complaint, in making his Fourth Amendment argument, relied on Army Regulation 380-19 and that the ABCMR "has authority to 'correct an error or remove an injustice' in plaintiff's military record," *id.* at 591 (quoting 10 U.S.C. § 1552(a)(1)), and to "'reinstate [plaintiff] in a comparable active federal reserve status, restore his pay and order compensatory back pay,'" *id.* (quoting *Williams v. Wilson*, 762 F.2d 357, 360 n.6 (4th Cir. 1985) (alteration in original)). The court reasoned:

> At bottom, plaintiff seeks to rescind the resignation letter contained in his military record. In so doing, he relies on the Fourth Amendment and on Army Regulation 380-19. However, plaintiff's "failure to exhaust intraservice administrative remedies [makes] his federal claim a nonjusticiable military controversy."

*Id.* (quoting *Williams*, 762 F.2d at 360) (alterations in original). Explaining that its dismissal *without prejudice* "grant[ed] deference to the military to handle its own affairs," the court stated that if the ABCMR had jurisdiction, the court would later conduct judicial review of the administrative proceeding.

But if the ABCMR did not have jurisdiction, the agency would "take no action and [Aikens] [could] return to federal court." *Id.* at 591-92.

Colonel Aikens contends that the district court was "indisputably wrong about exhaustion," but he elected not to appeal.[2] Neither did Colonel Aikens ask the district court for a stay of its dismissal order, a request he agreed at oral argument was not barred. Rather, he "dutifully," as he asserts, pursued administrative remedies before the ABCMR. The ABCMR denied Aikens relief, writing in a letter to Colonel Aikens, "Upon review it has been determined that your application and the remedy you seek is not within the purview of the ABCMR; therefore, it is returned without prejudice and without action being taken by this Board."

On March 31, 2008, more than six months after the district court entered its judgment of dismissal, Aikens returned to court. Rather than filing a new action, he filed a motion for relief from the September 14, 2007 judgment, pursuant to Federal Rule of Civil Procedure 60(b)(6). He argued that the judgment should be reopened because he had complied with the court's requirement that he exhaust his intra-service administrative remedies. The district court denied the motion on the ground that Colonel Aikens had failed to show the "extraordinary circumstances" warranting relief from the judgment under Rule 60(b)(6). *Aikens v. Ingram*, No. 5:06-cv-185-D, 2008 WL 4831420 (E.D.N.C. Nov. 5, 2008). The court noted that its judgment of dismissal without prejudice anticipated that Colonel Aikens would return to federal court through the filing of a new action. *See id.* at *4. Although Aikens failed to raise the issue in his Rule 60(b) motion, the court further noted that Aikens apparently sought Rule 60(b) relief because he might be faced with a statute of limitations

---

[2]Even though we do not address the merits of the district court's allegedly erroneous judgment requiring exhaustion, we do observe that the law on that issue was not entirely clear.

defense if he filed a new action. It observed, however, that any limitations problem was the result of Aikens' tactical decisions not to seek administrative review earlier and to file this action late in the limitations period. *See id.* at *5.

From the district court's order denying Aikens' motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6), Aikens filed this appeal.

## II

Federal Rule of Civil Procedure 60(b) authorizes a district court to grant relief from a final judgment for five enumerated reasons or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).[3] While this catchall reason includes few tex-

---

[3]Federal Rule of Civil Procedure 60(b) provides in full:

*Grounds for Relief from a Final Judgment, Order, or Proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

And Federal Rule of Civil Procedure 60(c)(1) provides:

*Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

tual limitations, its context requires that it may be invoked in only "extraordinary circumstances" when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5). *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11, 864 (1988). As Chief Justice Rehnquist noted in his separate opinion in *Liljeberg*:

> Rule 60(b) authorizes a district court, on motion and upon such terms as are just, to relieve a party from a final judgment, order, or proceeding for any "reason justifying relief from the operation of the judgment." However, we have repeatedly instructed that only truly "extraordinary circumstances" will permit a party successfully to invoke the "any other reason" clause of § 60(b). This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved.

486 U.S. at 873 (Rehnquist, C.J., dissenting) (citations omitted). To give Rule 60(b)(6) broad application would undermine numerous other rules that favor the finality of judgments, such as Rule 59 (requiring that motions for new trial or to alter or amend a judgment be filed no later than 28 days after the entry of judgment); Rule 6(b)(2) (providing that a court may not extend the time to file motions under Rules 50(b), 50(d), 52(b), 59(b), 59(d), 59(e), and 60(b)); and Federal Rule of Appellate Procedure 4(a) (requiring generally that appeals be filed within 30 days after judgment).

We have thus required—in addition to the explicitly stated requirements that the motion under Rule 60(b)(6) be filed on "just terms" and within "a reasonable time"—that the party filing the motion have a meritorious claim or defense and that the opposing party not be unfairly prejudiced by having the judgment set aside. *See Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993). And if the reason asserted for the Rule 60(b)(6) motion could have been

addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal. *See Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (holding that the "voluntary, deliberate, free [and] untrammeled choice" not to appeal the original judgment or order cannot establish a basis for Rule 60 relief (quoting *Ackermann v. United States*, 340 U.S. 193, 200 (1950) (alteration in original)); *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992) ("A Rule 60(b) motion may not substitute for a timely appeal"). *See generally* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2864, at 359-60 & n.25 (2d ed. 1995) (collecting cases).

We review the district court's ruling on a 60(b) motion for abuse of discretion, *see Browder v. Dir., Dep't of Corrections of Ill.*, 434 U.S. 257, 263 n.7 (1978); *Nat'l Credit Union*, 1 F.3d at 265, and "an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review," *Browder*, 434 U.S. at 263 n.7.

With these principles in hand, we now turn to Colonel Aikens' contention that the district court abused its discretion in denying him relief from its prior judgment of dismissal under Rule 60(b)(6).

### III

Aikens asserts that he demonstrated extraordinary circumstances to reopen the September 14, 2007 judgment because (1) "[a]fter dismissal, he dutifully sought exhaustion from the ABMCR" and (2) he would "face a limitations defense" upon filing a new claim. He maintains that his predicament was "caused by the district court's erroneous exhaustion requirement" and that he is therefore entitled to relief from the erroneous judgment.[4] Alternatively, he argues that the district

---

[4]Aikens also argues that when the district court stated that he could "return to federal court" if the ABCMR did not have jurisdiction, it somehow

court should have treated his Rule 60(b)(6) motion as a new complaint that commenced a new action rather than deny it outright. On his observation that the defendants would likely have filed a statute of limitations defense against any new complaint that he might have filed, Aikens speculates:

> Appellees will argue that the limitations period began to run on November 24, 2003, when Col. Aikens became aware of the claim. A three year limitations period applies to Col. Aikens's claim. Col. Aikens timely filed his case in the district court on April 27, 2006, tolling the limitations period with 212 days left. But Appellees will argue that the limitations period began to run again on September 13, 2007, when the district court dismissed the claims for failure to exhaust and that the limitations period never was tolled again.

(Internal citations omitted).

In the circumstances, we conclude that the district court did not abuse its discretion in finding that Aikens did not demonstrate the "extraordinary circumstances" necessary to employ Rule 60(b)(6) as a bypass around routinely available procedures, particularly when his failure to use those procedures was the product of his strategic litigation choices. There were multiple procedural mechanisms that Aikens could have used to pursue his claim.

*First*, if Aikens was convinced that the district court erred in dismissing his action for failure to exhaust administrative remedies, as he apparently was, he should have appealed, but

---

made him a promise that he would succeed on his Rule 60(b)(6) motion. However, we refuse to construe this invitation-to-return language as anything other than the district court's explanation for dismissing his action *without prejudice*.

he did not. As he reiterates in his brief, "the district court was indisputably wrong about exhaustion, and Col. Aikens consistently argued to the district court that exhaustion was not required." The obvious procedure to follow was to appeal the judgment by filing a notice of appeal within 30 days of the September 14, 2007 judgment. This court has repeatedly recognized that a Rule 60(b) motion is not designed to serve as an alternative for an appeal. For example, in *Dowell*, we held that the district court did not abuse its discretion in denying a motion for relief from judgment based on a change in governing state law, because the petitioner did not appeal the original district court decision. *Dowell*, 993 F.2d at 48 (citing *Ackermann*, 340 U.S. at 198). In cases where the petitioner freely chooses not to appeal the district court's original judgment, this court has consistently held that the petitioner had not demonstrated extraordinary circumstances. *Id.*; *Burnley*, 988 F.2d at 3; *cf. Hall v. Warden*, 364 F.2d 495, 496 (4th Cir. 1966) (en banc) (refusing to vacate final judgment on grounds that district court erred in light of later Supreme Court decision). In short, Rule 60(b)(6) does not serve as a substitute for appeal. It is the office of appeal that is designed to correct perceived errors, and any appeal is governed by an independent set of rules and time considerations. *See, e.g.*, Fed. R. App. P. 4(a)(1) (providing, with exceptions, that a notice of appeal must be filed "within 30 days after the judgment or order appealed from is entered").

*Second*, Aikens could have asked the district court to stay the action pending exhaustion of administrative remedies, but again he did not, failing to recognize that such a stay would be an appropriate exercise of the district court's discretion. We have readily ordered a stay of an ongoing federal action pending exhaustion of administrative or state proceedings, particularly to avoid statute of limitations problems. *See, e.g.*, *Traverso v. Penn*, 874 F.2d 209, 212-13 (4th Cir. 1989) (requiring a stay rather than dismissal of § 1983 action to allow for exhaustion of pending state proceedings); *Suggs v. Brannon*, 804 F.2d 274, 279-80 (4th Cir. 1986) (abstaining

from § 1983 claim due to ongoing state prosecution, but ordering a stay rather than dismissal because of statute of limitations problem); *Stubbs v. Foley*, No. 92-7164, 998 F.2d 1010, 1993 WL 261975 at *2 (4th Cir. July 2, 1993) (unpublished) (vacating dismissal for failure to exhaust and remanding with order to stay pending exhaustion due to concern about a potential statute of limitations problem). And if the district court refused a stay, he could have appealed and requested a stay from us. *See id.*

*Third*, after exhausting administrative remedies, Aikens could have filed a new action, rather than seeking relief from a months-old judgment or claiming that the district court should have treated his Rule 60(b)(6) motion as a new action. At oral argument, Aikens' counsel conceded that had he filed a new action instead of a Rule 60(b)(6) motion, it would have been timely filed and not subject to a statute of limitations defense. Because counsel made the choice to file a Rule 60(b)(6) motion, the district court reasonably found that Aikens had not demonstrated "extraordinary circumstances" to justify granting a Rule 60(b)(6) motion.

In short, Aikens' posited predicament was as much the result of his management of the action and his litigation strategy choices as it was the result of the district court's erroneous judgment of dismissal. Moreover, he did not demonstrate that his posited limitations predicament was anything more than speculation. It is not clear when Aikens' cause of action accrued, and Aikens' counsel agreed that he did not know what tolling provisions might apply or how they might apply.

The district court concluded that Aikens cannot "avoid the statute of limitations problem he now faces by deft use of Rule 60(b)(6). Stated simply, 'extraordinary circumstances' do not arise due to time limitations that otherwise apply, and a plaintiff cannot use Rule 60(b)(6) to evade such time limitations." *Aikens*, 2008 WL 4831420, at *5. We cannot find that the district court's conclusion was an abuse of discretion.

Indeed, it is consistent with the Supreme Court's similar conclusion in *Ackermann*, where the petitioner decided not to appeal for tactical reasons. As the Court stated:

> Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong . . . . There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

*Ackermann*, 340 U.S. at 198.

## IV

In the alternative, Aikens argues that the district court should have treated his Rule 60(b)(6) motion as a complaint commencing a new action, citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001). This is an extraordinary argument for him to make since he acknowledges that he made a choice not to file a new action and that he never asked the district court to treat his Rule 60(b)(6) motion as a new complaint. Had Aikens made that request, the court surely would have instructed him to file the complaint, not the Rule 60(b)(6) motion.

The holding in *Miller* provides meager support for his position. In *Miller*, a *pro se* inmate filed a "Motion to Reinstate Cause," complaining about prison conditions. The Eighth Circuit, giving the inmate, who was not a lawyer, the benefit of a liberal construction, treated the inmate's motion to reinstate "cause" as a complaint stating the "cause." *Miller*, 247 F.3d at 739.

Aikens' circumstances are not similar. While the inmate in *Miller* apparently sought to file a "cause," Aikens' Rule 60(b)(6) motion was filed to vacate a final judgment. In addition, courts construe *pro se* motions liberally, which the district court was not required to do for Aikens in this case because he was represented by counsel at all times. Finally, we cannot find that the district court abused its discretion in not, *sua sponte*, treating Aikens' Rule 60(b)(6) motion as a new complaint, when Aikens deliberately refrained from making such a request himself.

V

In the circumstances of this case, we cannot conclude that the district court abused its discretion in denying Aikens' March 31, 2008 motion to reopen the September 14, 2007 judgment under Federal Rule of Civil Procedure 60(b)(6).

*AFFIRMED*

DIAZ, Circuit Judge, concurring:

I am pleased to join in full Judge Niemeyer's well-reasoned majority opinion. I write separately to address a few of the contentions raised by my dissenting colleagues.

At a global level, I am concerned by the dissenters' application of the abuse-of-discretion standard, which all agree is the prism through which we must measure the district court's action in this case. The principal dissent authored by Judge King posits that the en banc majority would readily consent that the district court "certainly had the discretion" to grant Aikens's Rule 60(b)(6) motion without fear of reversal. *Post* at 29-30. It then argues that the district court abused its discretion because "it could—and should—have found the 'extraordinary circumstances' necessary to grant Aikens's motion"

and criticizes the majority for "standing on ceremony" in affirming denial of the motion. *Id.* at 40.*

Yet inherent in the deferential abuse-of-discretion standard is an overarching command of "judicial restraint, which . . . safeguard[s] the superior vantage points of those entrusted with primary decisional responsibility." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 320–21 (4th Cir. 2008). When reviewing a lower court decision for abuse of discretion, words like "could" and "should" are not part of our judicial lexicon. Indeed, the standard "requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Id.* at 322. Ever cognizant that our evaluation in such a case is "only a posterior check on judgment which strays too far from the mark," we must further realize that the abuse-of-discretion standard "draws a line . . . between the unsupportable and the merely mistaken." *Id.* Reversal is appropriate only in the former case.

Were I the district judge in this case, I might well have reached a conclusion different from that below and granted Aikens's Rule 60(b)(6) motion. And if I did so, my opinion likely would have resembled the principal dissent. Once a case reaches our court, however, the applicable standard of review often forecloses us from substituting our judgment for that of the district court. While the principal dissent convincingly demonstrates that the district court *could* have granted Aikens's motion, it fails to establish that failure to grant the

---

*Judge Davis appears to venture even farther than the principal dissent, urging in his dissent that we adopt a sliding-scale approach where the amount of deference accorded district judges fluctuates based on how much appellate judges like the result. Standards of review, however, as the very bedrock of our decision-making authority, must mean something. And review for abuse of discretion must not be converted into de novo review, even though our personal views about the underlying judgment may tempt us so.

motion was so beyond the pale that it constitutes an abuse of discretion. The dissenters' view of the appropriate standard comes perilously close to endorsing a system where this court zealously accords deference to district judges—but only when they reach the decisions that we would have reached in the first instance.

Turning to the Rule 60(b)(6) motion itself, the principal dissent posits that the requisite "extraordinary circumstances" are present here. It relies primarily on four cases to support this contention, but none has persuasive value under the circumstances of this case. In *Compton v. Alton Steamship Co.*, 608 F.2d 96 (4th Cir. 1979), we reversed a district court's denial of a litigant's Rule 60(b) motion. The moving party there, however, could not have appealed entry of a default judgment. *Id.* at 104 n.14. Thus, we treated the motion as a substitute for the otherwise-unavailable appeal, noting that the litigant had filed the motion within ten days of judgment. *Id.* at 100, 104 & n.14. In contrast, nothing barred Aikens from appealing the initial exhaustion ruling, rendering *Compton* inapposite.

The principal dissent finds a single decision in which this court has reversed denial of a Rule 60(b)(6) motion where appellate review was available and the moving party failed to appeal. *See White v. Investors Mgmt. Corp.*, 888 F.2d 1036 (4th Cir. 1989). *White*, too, is readily distinguishable from this case, as there the district court entered judgment without notice to either party and without a hearing "even though there was an outstanding order compelling the defendant . . . to produce a critical document in the determination of the case." *Id.* at 1040. We excused the plaintiff's failure to appeal because he moved quickly—within the ordinary thirty-day postjudgment window—to file his Rule 60(b)(6) motion. *Id.* at 1040–41. Aikens here proffers no similarly troubling due process concerns, and his motion was not timely filed, reaching the court over six months after the initial judgment was rendered and almost two months after the ABCMR decision.

A summary sketch of the other cases relied on by the principal dissent demonstrates their inutility here. The decision in *Whitmore v. Avery*, 179 F.R.D. 252 (D. Neb. 1998), was animated by the need to show leniency to pro se prisoners, "bizarre changes" occurring throughout the pendency of the case, "exceptional turns and events" of the litigation, and "the morass that is habeas corpus jurisprudence." *Id.* at 253–59 & 259 n.4. *Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009), involving a habeas petitioner on death row, similarly presents factors not present here—namely, the need to balance "the finality of the judgment against Thompson . . . against the more irreversible finality of his execution," *id.* at 444. Far from compelling this court to find "extraordinary circumstances" here, precedent fails even to support our extension of the term to the events of this case.

The principal dissent asserts that "Aikens selected the obvious and . . . efficient option" in choosing to forgo appeal of the exhaustion ruling and proceed straight to the ABCMR. *Post* at 22. This assertion is puzzling, though, given the principal dissent's claim that the district court's exhaustion ruling was "demonstrably wrong." *Id.* at 20. Perhaps recognizing this asymmetry, the principal dissent in a later footnote explains that "[this court] might instead have affirmed [on appeal] and Aikens would have ended up before the ABCMR anyway." *Id.* at 32 n.9. But the principal dissent cannot have it both ways. Either the district court's exhaustion ruling was patently erroneous, in which case Aikens's failure to appeal cannot be excused. Or the district court's exhaustion ruling was reasonable, critically weakening the principal dissent's "extraordinary circumstances" argument.

The principal dissent next contends that Supreme Court precedent *compelled* the district court to identify a possible statute-of-limitations issue and *sua sponte* enter a stay after concluding that Aikens must exhaust his administrative remedies. In so doing, it reads Supreme Court precedent a bit too broadly. The Supreme Court has indeed confirmed that "a

federal court [is *permitted*] to stay proceedings in a case properly before it while awaiting the decision of another tribunal." *United States v. Mich. Nat'l Corp.*, 419 U.S. 1, 4 (1974) (emphasis added). And the Court has at least once ordered entry of a stay when a party has argued that the applicable statute of limitations may bar refiling of a claim after agency action. *Carnation Co. v. Pac. Westbound Conference*, 383 U.S. 213, 222 (1966).

I doubt the applicability of *Carnation* to this case, as it dealt with a tightly cabined antitrust claim in the context of the doctrine of primary jurisdiction. *See Guam v. Am. President Lines*, 28 F.3d 142, 149 n.11 (D.C. Cir. 1994) (expressing skepticism about propriety of reading *Carnation* to endorse general proposition that, "where rights would be lost as a result of a statute of limitations bar, the district court must retain jurisdiction [after referring case to agency] in order to toll the limitations period"). And, in any event, *Carnation* and the Supreme Court cases relied on by the principal dissent include crucial elements missing from Aikens's challenge. All were direct appeals from an exhaustion ruling, and in each the parties brought the statute-of-limitations issue to the attention of the court. Neither the Supreme Court nor this court has ever even intimated that a district court must search the record for possible statute-of-limitations problems and *sua sponte* enter a stay after determining that a plaintiff has not exhausted his administrative remedies.

Turning to the possible statute-of-limitations bar confronting Aikens, the principal dissent posits that the district court in its denial of Aikens's Rule 60(b)(6) motion "contradicted its assertion [in the exhaustion ruling] that its dismissal did not foreclose a new action, opining that the statute of limitations . . . had likely expired well before the dismissal was even entered." *Post* at 24 n.5. "Surprisingly," writes the principal dissent, "the court blamed Aikens, rather than itself, for creating the statute of limitations issue." *Id.* Yet it is not the role of the district court to act as a roving advocate, providing

legal arguments to the parties before it. No one raised the possible statute-of-limitations issue during the exhaustion dispute, and the district court certainly was not obligated to scour the record for possible defenses that could be asserted if the suit was refiled upon exhaustion. *See Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 861 (N.D. Ill. 2008) ("[I]t is not the Court's place to try to make arguments for represented parties."). When confronted with the issue for the first time during the Rule 60(b)(6) briefing, the court unremarkably speculated that the limitations period had already run by the time of the exhaustion ruling. Nothing prevented Aikens from doing this same math during the exhaustion dispute and safeguarding his claim from later attack.

Tying a bow on its legal arguments, the principal dissent appeals finally to equity. In its words, "The Complaint depicts a literally unwarranted intrusion into the private communiques of a citizen-soldier stationed many thousands of miles from home and serving in the best traditions of the nation's militia, humiliated and disgraced by a nominal superior." *Post* at 40. Calling "the cause [] just, the wayfarer worthy, and the path untrodden," the principal dissent urges reversal of the district court's judgment. *Id.* at 41.

Although I hesitate to delve into the merits, suffice it to say that the record also reveals an unseemly side to Aikens's military service. As the majority opinion notes, Aikens was ultimately investigated for "hostile command climate" and "inappropriate relations with women," and the findings were substantiated by the Department of the Army Inspector General. Aikens's principal contention in this case is that the evidence used to support the findings—personal emails—was obtained in contravention of his constitutional rights. The equities thus do not weigh one-sidedly in Aikens's favor and ineluctably impel reversal, as the principal dissent would have it.

Admittedly, our decision today bars a full airing of Aikens's claims. Because, however, I am satisfied that the

deference owed the district court on appeal requires this result, I concur in the majority opinion.

Judge Shedd, Judge Duncan, and Judge Agee have authorized me to indicate that they join in this opinion.

KING, Circuit Judge, dissenting:

A majority of our en banc Court imposes the severest of sanctions against Colonel Aikens for his lawyer's failed, but sincere attempt to have the district court address the merits of Aikens's claim that his former military associates engaged in deplorable conduct that worked a serious deprivation of his civil rights. Having concluded, wrongly, that it lacked authority to decide the dispute, the district court dispatched Aikens to embark on a futile quest to vindicate its jurisdictional theory. Though the court believed itself rid of the matter, it was required by long-standing Supreme Court precedent to nonetheless retain the case and enter a stay *sua sponte*. The district court instead erroneously dismissed it, assuring Aikens that he "may return to federal court" if he truly belonged there. *Aikens v. Ingram*, 513 F. Supp. 2d 586, 592 (E.D.N.C. 2007).

Aikens took the court up on its offer, accepting its invitation to return after verifying that proceeding before the Army Board for Correction of Military Records (the "ABCMR") was unnecessary. That process took less than seven months, an accomplishment that, given the oft-glacial pace of civil litigation, can hardly be criticized. But because counsel sought to attract the district court's attention through a timely Rule 60(b) motion rather than risking his client's cause by filing a potentially untimely new complaint, the court yanked the welcome mat from beneath Aikens's feet. Now, on appeal, the en banc majority has failed to appreciate that this entire predicament was not the result of counsel's disputably poor choices, but was instead caused by the district court's demonstrably wrong ones. Unwilling to lend my sanction to the injustice below, I must dissent.

## I.

### A.

Colonel Aikens asserts that, while he was deployed to the Middle East supporting Operation Iraqi Freedom, his personal email was illegally intercepted and used to compel his retirement from the North Carolina Army National Guard (the "Guard") after thirty-two years of service. Those responsible, according to Aikens, were Adjutant General William E. Ingram, Jr., and Lieutenant Colonel Peter von Jess. On April 27, 2006, Aikens filed his § 1983 claim in the Eastern District of North Carolina, alleging that Ingram and von Jess had contravened his Fourth Amendment rights. Over Aikens's vehement objection, the district court dismissed the § 1983 claim on the mistaken belief that Aikens was required, but had failed, to exhaust remedies with the ABCMR. *See Aikens v. Ingram*, 513 F. Supp. 2d 586, 588 (E.D.N.C. 2007).

Generally speaking, if a service-member plaintiff fails to exhaust "available intraservice remedies," his federal claim against the military is "a nonjusticiable military controversy." *Williams v. Wilson*, 762 F.2d 357, 360 (4th Cir. 1985). We have recognized an exception, however: "If the outcome would predictably be futile, the doctrine of exhaustion will not apply." *Guerra v. Scruggs*, 942 F.2d 270, 276 (4th Cir. 1991) (internal quotation marks omitted). In conformance with our precedent, Colonel Aikens contended in the district court that there were no "available intraservice remedies" and the outcome of an ABCMR application "would predictably be futile" because the ABCMR lacked jurisdiction to accord him any relief. *See* 32 C.F.R. § 581.3(e)(1)(iii) (providing that an "application may be returned without action if . . . [t]he ABCMR does not have jurisdiction to grant the requested relief"); *cf. Guerra*, 942 F.2d at 277 (observing that "the inability of the [ABCMR] to give the plaintiff all the relief he seeks does not automatically excuse the failure to exhaust" (citing *Williams*, 762 F.2d at 360 n.6)). Aikens principally

maintained — with citation to numerous supporting authorities — that his separation from the Guard was a state matter for which no federal ABCMR remedies existed. The court disagreed, however, analogizing to our decisions where some ABCMR relief was thought to be available and thus exhaustion was deemed to be required. *See Aikens*, 513 F. Supp. 2d at 591-92.

Once the district court dismissed his case, Colonel Aikens was faced with two options. First, he could proceed directly to the ABCMR — plainly a far more suitable and definitive arbiter of its own jurisdiction than any federal court. *See Randall v. United States*, 95 F.3d 339, 348 (4th Cir. 1996) (recognizing that, to the extent federal courts may review ABCMR decisions, "such decisions can be set aside only 'if they are arbitrary, capricious, or not based on substantial evidence'" (quoting *Chappell v. Wallace*, 462 U.S. 296, 303 (1983))).[1] Alternatively, Aikens could appeal to this Court and, if we affirmed the district court, end up before the ABCMR anyway. Aikens selected the obvious and more efficient option: filing the ABCMR application. Four months later, just as Aikens had predicted, the ABCMR determined that it was powerless to act on the application because the relief sought therein was "not within [its] purview." J.A. 43.[2]

---

[1]Indeed, a federal court's view of the ABCMR's jurisdiction is of no import when the ABCMR itself has spoken on the issue. The federal courts may only forecast how the ABCMR might delineate its own jurisdiction, not define the ABCMR's jurisdiction for it. *See Guerra*, 942 F.2d at 276 (recognizing that, in determining whether exhaustion is necessary, we must assess "[i]f the outcome would predictably be futile" (internal quotation marks omitted)); *see also Randall*, 95 F.3d at 348 (observing that, insofar as ABCMR decisions are subject to federal court review at all, "such decisions can be set aside only if they are arbitrary, capricious, or not based on substantial evidence" (internal quotation marks omitted)). As the district court itself acknowledged, courts must "grant[ ] deference to the military to handle its own affairs." *Aikens*, 513 F. Supp. 2d at 591-92.

[2]Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties to this appeal.

This development brought Colonel Aikens to another cross-roads. On the one hand, because his § 1983 claim had been dismissed without prejudice, he could reassert it in a newly filed action. Such a course was problematic, however, because Ingram and von Jess were already maintaining that the limitations period on the § 1983 claim had expired. On the other hand, Aikens could seek relief under Rule 60(b). The Rule 60(b) path was attractive because it would place Aikens in the same position he had occupied prior to the district court's erroneous exhaustion ruling — as the proponent of an indisputably timely § 1983 claim. Moreover, the court had explicitly assured Aikens that, if his position were shown to be correct, and "the ABCMR does not have jurisdiction," he could "return to federal court." *Aikens*, 513 F. Supp. 2d at 592. In these circumstances, Aikens understandably chose to file his Rule 60(b) motion. In so doing, he explained to the court that Rule 60(b) relief was necessary to avoid any statute of limitations problem, and he reminded the court of its explicit assurance. The crux of Aikens's position was clear-cut: He was entitled to Rule 60(b) relief because the court had erred in ordering exhaustion of intraservice remedies and had thereby caused his limitations period predicament.

In assessing the Rule 60(b) motion, the district court recognized that the statute of limitations on the § 1983 claim had "seemingly" expired. *See Aikens v. Ingram*, No. 5:06-cv-00185, slip op. at 7-8 (E.D.N.C. Nov. 5, 2008) (the "Rule 60(b) Order").[3] The court observed that, according to Colonel Aikens's complaint, he "discovered the facts underlying his cause of action on or about November 24, 2003." *Id.* at 7. The court further observed that "the statute of limitations seemingly began to run on that date, and it seemingly expired three years later, on November 24, 2006." *Id.* at 8. Obviously, if the limitations period ended on November 24, 2006 — as the court assumed — it expired prior to not only the ABCMR

---

[3]The district court's unpublished Rule 60(b) Order is found at J.A. 44-52.

determination of February 6, 2008, but also before the errone-
ous dismissal on September 13, 2007.[4]

Notwithstanding its supposition that Colonel Aikens had
been time-barred from re-asserting his § 1983 claim in a new
action even prior to the dismissal, the district court refused to
vacate the judgment under Rule 60(b). The court justified its
denial of relief by attributing the statute of limitations predic-
ament to "two tactical decisions with adverse affects [sic]"
made by Aikens himself — his decision not to exhaust
intraservice remedies before filing suit and his decision to
"wait[ ] to file suit over two years into the statute of limita-
tions, [leaving] little time if a court were to determine that
exhaustion was required." Rule 60(b) Order 8.[5] Even though
Aikens had accurately concluded that such an exhaustion
effort was unnecessary because the ABCMR lacked jurisdic-
tion to accord relief, in the court's view Aikens should have
foreseen that it would incorrectly rule to the contrary. And,
having anticipated the court's error, Aikens should have acted
to ensure that his § 1983 claim would not thereby be rendered
untimely.[6]

---

[4]The district court declined to "resolve [the statute of limitations] issue
definitively," explaining that "[if] plaintiff files a new action, and defen-
dants assert the statute-of-limitations defense, the court will then address
the issue." Rule 60(b) Order 8 n.1.

[5]Executing an about-face, the court disclaimed ever "implying that
plaintiff could return to court in this action." Rule 60(b) Order 7. "Rather,"
according to the court, it "was making the unremarkable observation that
if the ABCMR determined that it lacked jurisdiction, nothing in the court's
dismissal would prevent plaintiff from filing a new action against Ingram
and von Jess." *Id.* In the very next paragraph of the Rule 60(b) Order,
however, the court contradicted its assertion that its dismissal did not fore-
close a new action, opining that the statute of limitations on Aikens's
§ 1983 claim had likely expired well before the dismissal was even
entered. *See id.* at 7-8. Surprisingly, the court blamed Aikens, rather than
itself, for creating the statute of limitations issue. As the court would have
it, the timeliness problem resulted not from its own mistake, but from
Aikens's failure to anticipate the same.

[6]There is simply no basis for the district court's theory that Colonel
Aikens should have foreseen its error and proceeded accordingly.

## B.

In pursuing relief, Colonel Aikens specifically invoked clause (6) of Rule 60(b), which authorizes a court to relieve a party from a final judgment for "any other reason [not spelled out in clauses (1)-(5)] that justifies relief." Of course, to be entitled to Rule 60(b)(6) relief, the movant must demonstrate "extraordinary circumstances." *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 n.2 (4th Cir. 2000) (explaining that "the difference between Rule 60(b)(6) and Rules 60(b)(1)-(5) is that 'extraordinary circumstances' are required to bring the Rule 60(b)(6) motion within the 'other reason' language of that Rule" (internal quotation marks and alterations omitted)). Nevertheless, we have had no difficulty recognizing the existence of extraordinary circumstances where — as here — the district court erroneously issued the underlying judgment. *See White v. Investors Mgmt. Corp.*, 888 F.2d 1036, 1041 (4th Cir. 1989); *Compton v. Alton Steamship Co.*, 608 F.2d 96, 106-07 (4th Cir. 1979).[7]

Although the court found that Aikens and his lawyer "must have known that [Aikens] would face the ABCMR exhaustion issue in his case," Rule 60(b) Order 7, that finding stops well short of the proposition that Aikens should have expected the court to erroneously dispose of that issue. And indeed, once Aikens assessed the exhaustion issue, he concluded — correctly — that the ABCMR was powerless to award him relief.

[7]Notably, we have also observed that a "mistake" within the meaning of clause (1) of Rule 60(b) — authorizing relief from judgment because of "mistake, inadvertence, surprise, or excusable neglect" — may include a mistake made by the court itself. *See United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982) ("In certain limited circumstances, the word 'mistake' in Rule 60(b) has . . . been read to include mistakes by the court."). At first blush, this notion might seem to hurt Aikens, because the Supreme Court has indicated that clause (1) and clause (6) "are mutually exclusive." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988)). In deeming a movant to be entitled to Rule 60(b) relief because of a court's mistake, however, we have relied on clause (6). *See Compton*, 608 F.2d at 104 & n.15 (declining to resolve

In *White*, a dispute over the amount due the plaintiff on a stock redemption, the district court had awarded summary judgment to the defendant "without notice and without a hearing, even though there was an outstanding order [issued by the magistrate judge] compelling the defendant . . . to produce a critical document in the determination of the case." *See* 888 F.2d at 1037, 1040. We reversed the court's denial of Rule 60(b) relief, explaining:

> When the court overlooks the dispositive issue in a case and proceeds to decide a case summarily before discovery is concluded and before an order of discovery has been complied with, there has been a mistake and inadvertence and one that works an injustice. Rule 60(b) — especially as amended in 1948 by the addition of (b)(6) — clearly covers the plaintiff's motion to vacate the summary judgment entered here.

---

whether court's mistake constituted clause (1) "mistake," because relief was available under clause (6)); *see also White*, 888 F.2d at 1041 (determining, without mentioning clause (1), that clause (6) relief was available to remedy court's mistake); *cf. Williams*, 674 F.2d at 312-13 (concluding that court's purported error was not type of "mistake" that would justify clause (1) relief). Moreover, the rationale for deeming clause (1) and clause (6) to be mutually exclusive — prohibiting parties from attempting to utilize clause (6) to avoid clause (1)'s one-year limitations period — is not implicated here because Aikens filed his Rule 60(b) request within seven months of the Dismissal Order. *See Pioneer Inv. Servs.*, 507 U.S. at 393 (recognizing that, because clauses (1) and (6) are mutually exclusive, "a party who failed to take timely action [under clause (1)] may not seek relief more than a year after the judgment by resorting to [clause (6)]"); *see also* Fed. R. Civ. P. 60(c)(1) (allowing one year for clause (1) motion but "reasonable time" for clause (6) motion). Additionally, we have recognized that, because Rule 60(b)'s "grounds for relief often overlap," courts are "free . . . to do justice in cases in which the circumstances generally measure up to one or more itemized grounds." *Werner v. Cabo*, 731 F.2d 204, 207 (4th Cir. 1984) (citing *Compton*, 608 F.2d at 102). As such, although it may also have been proper for Aikens to rely on clause (1), it was not at all inappropriate for him to invoke clause (6).

*Id.* at 1041. In *Compton*, an action for unpaid wages in which a default judgment was entered against the defendant, the district court had erroneously awarded the plaintiff statutory penalty wages, resulting in an award "almost two hundred times" the amount plaintiff was actually owed. *See* 608 F.2d at 99, 101. We concluded that — because of "the unusual and extraordinary circumstances of this case and in view of the unconscionably unjust judgment entered" — this was "just such an extraordinary case where [Rule 60(b)(6)'s] 'catch-all' ground was intended to afford relief." *Id.* at 106, 107 (emphasis omitted).

On appeal, Colonel Aikens also relies on similarly decided Rule 60(b)(6) decisions from other jurisdictions, specifically involving erroneous dismissals for failure to exhaust. *See Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009); *Whitmore v. Avery*, 179 F.R.D. 252 (D. Neb. 1998). In *Thompson*, the district court had dismissed several of the petitioner's federal habeas claims because, in prior state proceedings, he had failed to seek discretionary review of those claims in the Supreme Court of Tennessee. *See* 580 F.3d at 433. Following the Tennessee supreme court's promulgation of a rule clarifying that state habeas petitioners need not appeal to that court to exhaust their claims, the *Thompson* petitioner unsuccessfully moved in the district court for Rule 60(b)(6) relief from its dismissal order. *See id.* The Sixth Circuit reversed the denial of the clause (6) motion, however, concluding that promulgation of the new Tennessee supreme court rule was an "extraordinary circumstance" warranting such relief. *See id.* at 442-43. Notably, the Sixth Circuit distinguished *Thompson* from *Gonzalez v. Crosby*, 545 U.S. 524, 533 (2005), wherein the Supreme Court deemed clause (6) relief inappropriate based on a recent change in federal decisional law regarding the interpretation of a federal habeas procedural statute. The *Thompson* court explained that, unlike the change in federal law in *Gonzalez*, the change in Tennessee state law was an extraordinary circumstance because "refusing to recognize it would disserve . . . comity interests . . . by ignoring the state

court's view of its own law." *Thompson*, 580 F.3d at 443 (internal quotation marks and emphasis omitted).

Finally, in *Whitmore*, after dismissing the petitioner's federal habeas claim for failure to exhaust state remedies, the district court itself recognized that it had made a mistake worthy of Rule 60(b)(6) relief. *See* 179 F.R.D. at 258-59. The court observed, inter alia, in terms that are strikingly applicable here, that "the petitioner [could not] have followed my instructions and exhausted his remedies, because the claim was not one that could be exhausted or that federal law requires to be exhausted." *Id.* at 259. Accordingly, the court concluded that "this is the type of case that warrants the exceptional relief contemplated by Rule 60(b)(6)." *Id.*

Likewise, the extraordinary circumstances demonstrably present here demand that Colonel Aikens be afforded Rule 60(b)(6) relief from the district court's error. As Aikens has aptly emphasized,

> Appellees unlawfully — and possibly criminally — invaded Col. Aikens' privacy by monitoring and intercepting his e-mails, while he was serving his country in a combat zone, in violation of the Fourth Amendment and [42] U.S.C. § 1983. Col. Aikens has yet to be heard on the merits of his claims and, without relief, may never be. Col. Aikens' first timely attempt to have his case heard was dismissed for failure to exhaust intraservice remedies, despite the fact that no intraservice remedies were available. His second attempt, this time before the ABCMR, as directed by the district court, was rejected because, as Col. Aikens predicted, the ABCMR lacks authority to provide the relief Col. Aikens seeks. Col. Aikens' third attempt, to revive his first lawsuit through Rule 60(b)(6) after exhausting intraservice remedies with the ABCMR as required by the district court, was denied. Col. Aikens now faces a stat-

ute of limitations defense to any future attempt to file a new lawsuit. These circumstances are exceptional.

Reply Br. of Appellant 1-2 (footnote omitted). Indeed, in these circumstances, the court has committed "a mistake . . . that works an injustice," *see White*, 888 F.2d at 1041, and "fundamental fairness and considerations of justice . . . command that the judgment . . . be vacated," *see Compton*, 608 F.2d at 107. Notably, in addition to accomplishing justice for Aikens, Rule 60(b)(6) relief would serve comity interests by recognizing that the ABCMR is entitled to define its own jurisdiction. *Cf. Thompson*, 580 F.3d at 443 (concluding that Rule 60(b)(6) relief furthered comity interests by recognizing and accepting "the state court's view of its own [habeas corpus] law" (internal quotation marks omitted)).

To be sure, not all mistakes made by a court are sufficient to warrant Rule 60(b) relief. We have admonished that "[w]here the motion is nothing more than a request that the district court change its mind, . . . it is not authorized by Rule 60(b)." *United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982). Furthermore, we have said that "we may not review the merits of the underlying order" in reviewing the denial of Rule 60(b) relief. *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 277 (4th Cir. 2008) (internal quotation marks omitted). Here, however, Colonel Aikens was not asking the district court to "change its mind" about its exhaustion ruling, or, by appealing, seeking our independent review of the merits of the court's decision. Rather, he is asking for the simple recognition, based on the ABCMR's assessment of its jurisdiction, that the district court itself erred in concluding that he was required to exhaust intraservice remedies. These extraordinary circumstances warrant Rule 60(b)(6) relief.

## II.

The foregoing amply illustrates that had the district court been inclined to grant Aikens's Rule 60(b) motion, it certainly

had the discretion to do so — a proposition that I trust would not stir much controversy even among the members of the en banc majority. By far the more provocative legal question is whether the court's denial of the motion constituted an abuse of its discretion.

Put simply, the abuse of discretion standard of review does not confer upon a district court carte blanche to close its doors to a litigant who is merely following the court's own advice. Indeed, we have previously emphasized that "even under an abuse of discretion standard, we still must engage in 'meaningful appellate review.'" *United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008). Our precedent counsels that "a reviewing court is obliged to reverse if the court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Gannett Co., Inc. v. Clark Const. Group, Inc.*, 286 F.3d 737, 741 (4th Cir. 2002) (internal citation omitted). This is so "[e]ven if a district court applies the correct legal principles to adequately supported facts." *Id.*

In this case, the district court erroneously dismissed Aikens's claim, thereby inducing him unwittingly to pursue a litigation strategy that ultimately prevented his claim from being heard. Afforded the opportunity to set the matter straight, the court instead perpetuated and compounded its earlier mistake. In such circumstances, I cannot help but hold a definite and firm conviction that, by denying Aikens's Rule 60(b) motion, the district court committed a "clear error of judgment."

The majority holds that the district court did not abuse its discretion because it supposes that Aikens may have had other litigation alternatives. However, the majority offers no support for the contention that the presence of other litigation alternatives — even if true — would justify the district court's denial of Aikens's motion. The district court's culpability for Aikens's statute of limitations predicament itself constitutes

extraordinary circumstances such that the court abused its discretion by subsequently denying Aikens's Rule 60(b) motion.[8] With all respect to the majority, emphasizing the steps that counsel might have taken to extricate his client from the mess below unfairly deflects the focus from the district court and inappropriately marginalizes the efforts that counsel, in good faith, did take. I therefore address — and reject — the majority's theories in turn.

## A.

The majority criticizes counsel for not appealing the district court's jurisdictional ruling. But what would Aikens have gained from an appeal? Less than seven months after the dismissal, Aikens was back before the court with an unequivocal decree that the ABCMR was an improper forum for this particular dispute, from no less an authority than the ABCMR itself. There was virtually no chance that we would have ren-

---

[8]The district court, for its part, unjustifiably equated this matter to decisions in which "[t]he Supreme Court and the Fourth Circuit have denied Rule 60(b)(6) relief when the moving party made a tactical choice that later proved unwise." Rule 60(b) Order 6 (citing *Ackermann v. United States*, 340 U.S. 193, 200 (1950) (movant made "voluntary, deliberate, free, untrammeled choice" not to file timely appeal based on belief he would have to sell home to pay costs); *Schwartz v. United States*, 976 F.2d 213, 218 (4th Cir. 1992) (movant made "calculated, free, and deliberate" decision to settle dispute)). More specifically, the court relied on inapposite decisions for the proposition that Colonel Aikens could not make "deft use of Rule 60(b)(6)" to evade "time limitations that otherwise apply." *Id.* at 8 (citing, inter alia, *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 47-48 (4th Cir. 1993) (movant failed to timely request certification of state law question or appeal adverse judgment); *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992) (movant sought clause (6) relief from default judgment for "excusable neglect" to circumvent clause (1) time limitations)). Neither these nor any other applicable authorities support the notion that Colonel Aikens's failure to foresee and safeguard against the district court's error constitutes an "unwise tactical choice" foreclosing Rule 60(b)(6) relief, or that Aikens cannot make "deft use of Rule 60(b)(6)" to remedy the timeliness problem directly resulting from the court's mistake.

dered a comparable judgment so quickly, given our systemic druthers for orderly briefing, unhurried argument, and deliberate decision-making. The only advantage that Aikens would have realized from a Fourth Circuit judgment is the insurance it would have provided against a second unanticipated and unjustified refusal of the district court to entertain the merits of his claim. Viewed through the perfect prism of hindsight, that might have been a valuable benefit. Through the soot-stained obsidian of the then and there, however, the potential boon of an immediate appeal was by no means apparent.[9]

## B.

True, counsel could have requested a stay while he attempted to proceed before the ABCMR. But, in accordance with procedures long established by the Supreme Court, the district court should have entered a stay on its own initiative. In *General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422 (1940), the Court confronted a dispute

---

[9]In dismissing Colonel Aikens's § 1983 claim for failure to exhaust intraservice remedies, the district court asserted that it "acted in accordance with a veritable wall of Fourth Circuit precedent requiring such exhaustion." Rule 60(b) Order 7. In this regard, the court perhaps goes so far as to suggest that it did not actually err in its exhaustion ruling (a proposition pursued on appeal by Ingram and von Jess). *See* Br. of Appellees 22 (contending that there can be no Rule 60(b) relief premised on a "mistake" made by the court, because the "court's conclusion that Aikens was required to exhaust his intraservice administrative remedies . . . was correct under Fourth Circuit precedent").

Perhaps if Aikens had appealed the dismissal, we would have reversed the district court's ruling that intraservice remedies were available and required to be exhausted. But we might instead have affirmed and Aikens would have ended up before the ABCMR anyway — the more likely outcome if the district court indeed "acted in accordance with a veritable wall of Fourth Circuit precedent." In either case, our decision could only have constituted a prediction — and not the definitive word — on whether the ABCMR possessed jurisdiction. *See supra* note 1. As such, it was entirely reasonable for Aikens to proceed directly to the ABCMR and then return to the district court on his Rule 60(b) motion.

between a shipper of coconut oil and a supplier of railroad cars for rent, in which the latter ceased honoring its contract to credit the shipper with mileage allowances paid by the railroads using the rental cars to haul the shipper's goods. The car owner premised its refusal on an intervening decision of the Interstate Commerce Commission ("ICC") that arguably rendered illegal the parties' business arrangement.

A unanimous Court, speaking through Associate Justice Roberts, rejected the ICC's contention, as amicus curiae, that the federal courts lacked jurisdiction over the matter, observing that "[t]he action was an ordinary one in assumpsit on a written contract." *General American*, 308 U.S. at 432. The Supreme Court nevertheless held that the district court "should not have proceeded to adjudicate the rights and liabilities of the parties in the absence of a decision by the [ICC] with respect to the validity of the practice involved in the light of the provisions of the Interstate Commerce Act." *Id.* at 428. The Court confirmed that the dispute was within the administrative authority of the ICC to decide, although Congress had left it to the courts to enforce those lawful decisions. In so ruling, the Supreme Court issued an unambiguous directive to district courts:

> When it appeared in the course of the litigation that an administrative problem, committed to the [ICC], was involved, the court should have stayed its hand pending the Commission's determination of the lawfulness and reasonableness of the practices under the terms of the Act. There should not be a dismissal, but . . . the cause should be held pending the conclusion of an appropriate administrative proceeding. Thus, any defenses the [defendant] may have will be saved to it.

*Id.* at 433 (citations omitted).

Over the years, the Court has reinforced the proper procedure in these sorts of cases. *See, e.g.*, *United States v. Mich.*

*Nat'l Corp.*, 419 U.S. 1, 4-5 (1974) (per curiam) (documenting "common practice" of district courts to retain jurisdiction through stay while litigation proceeds through state courts, and noting that same procedure generally applies "when the resolution of a claim cognizable in a federal court must await a determination by an administrative agency having primary jurisdiction"). The primary jurisdiction doctrine applies "to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (citations and footnote omitted). It is distinguishable from the doctrine of exhaustion of administrative remedies, applicable to disputes where agency relief must be pursued as a prerequisite to redress in the courts, and requiring any such suit to be dismissed as premature. *See id.* at 269; *Cavalier Tel., LLC v. Va. Elec. & Power Co.*, 303 F.3d 316, 322 n.10 (4th Cir. 2002) (citing, inter alia, *Reiter*).

Absent an exhaustion bar, dismissal is generally proper only "where there is assurance that no party is prejudiced thereby." *Mich. Nat'l* at 5 (citing *Far East Conference v. United States*, 342 U.S. 570 (1952) (footnote omitted)); *see also Reiter* at 268-69 (approving dismissal without prejudice "if the parties would not be unfairly disadvantaged"). In *Reiter*, the Supreme Court declined to impose a requirement of ICC exhaustion as to counterclaims asserted in response to an adversary proceeding in bankruptcy, expressing its concern that "the limitations period for filing actions . . . could expire before the ICC acted." 507 U.S. at 271.

As with *Reiter*, the prejudice inquiry in other cases has focused on limitations issues. *See Ton Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1242-43 (10th Cir. 2007) (acknowledging dismissal option "pending primary jurisdiction referral," but counseling that "[w]here damages are sought and the relevant statute of limitations might preclude relief . . . a stay is

likely to be preferable"); *Guglielmo v. Long Island Lighting Co.*, 445 N.Y.S.2d 177, 183 (N.Y. App. Div. 1981) (opining that, because of potential prejudice to plaintiff by running of statute of limitations, lower court "should have denied the cross motion for dismissal, and, after referring plaintiff to the PSC, should have, *sua sponte*, stayed this action pending the filing, and final resolution, of [an administrative] complaint" (citing *Mich. National*)); *see also S.S.W., Inc. v. Air Transp. Ass'n of Am.*, 191 F.2d 658, 664 (D.C. Cir. 1951) (endorsing *General American* approach in antitrust action upon primary jurisdiction referral to Civil Aeronautics Board). Had the district court in this case properly adhered to the dictates of *General American* and its progeny, the resultant stay would have wholly obviated any need for a lengthy appeal or for Aikens having to ultimately choose between the Scylla of Rule 60(b) reinstatement and the Charybdis of starting over. The court's error of law and its failure to consider the same in denying Colonel Aikens Rule 60(b)(6) relief from the improper dismissal of his claims was, "by definition," an abuse of its discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996).[10]

---

[10]In his separate concurring opinion, my good colleague admonishes that I have somehow interpreted "Supreme Court precedent a bit too broadly," surmising that the Court has stopped short of imposing an iron-clad rule mandating the *sua sponte* entry of a stay whenever a case is referred to an administrative agency under the primary jurisdiction doctrine. *Ante* at 17. But the only exceptions specifically approved by the Supreme Court to its pronouncement in *General American* that district courts should stay such actions pending referral are cases over which the agency has exclusive jurisdiction, or cases where Congress has afforded no remedy through the agency or the courts. *See Mich. Nat'l*, 419 U.S. at 5 n.2 (citing *Pan American World Airways v. United States*, 371 U.S. 296 (1963); *Montana-Dakota Util. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246 (1951)). Patently, neither of those exceptions to the Court's mandate apply here. Insofar, then, as the concurrence suggests that the district court in this case, in the exercise of its ordinary discretion, was free to ignore the established "common practice" in the federal courts, *see Mich. Nat'l* at 4, the concurrence is simply incorrect.

## C.

In connection with the majority's assertion that Aikens could have successfully proceeded with a new suit instead of seeking to revive the original action, counsel's supposed "concession" at oral argument, *see ante* at 12, that the hypothetical course would have been timely taken is hardly determinative. No court has yet endeavored to decide the issue, *see supra* note 4, and it is not easily resolved.

First, it is not entirely clear when the underlying cause of action accrued, although the Amended Complaint recites that "[o]n or about November 24, 2003, [Aikens] was informed that [Major David B.] Culbreth was . . . being involuntarily separated . . . based upon an e-mail message that Culbreth sent to [Aikens] on August 17, 2003." J.A. 13. Further, on that same date, Aikens "was also informed that . . . [Adjutant General William E.] Ingram used illegal means to obtain the . . . . subject email message . . . sent from Culbreth's personal email account . . . at home in Fayetteville, North Carolina, to [Aikens] who was stationed in Camp Doha, Kuwait." *Id.* Aikens's computer had been operational, however, almost from his arrival in Kuwait on April 21, 2003, and it is not inconceivable that if this case ever proceeded to discovery, the evidence might reveal an earlier accrual date.

Second, and more importantly, it is far from certain how much, if any, time since Aikens filed suit on April 27, 2006, ought to be excluded from the limitations calculus. Federal civil rights actions borrow the analogous state limitations period, and it has been assumed from the beginning that North Carolina's three-year period to commence personal injury actions governs here. *Cf. Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002). It is also true, however, that we apply the equitable tolling rules of the forum state. *See Wade v. Danek Medical, Inc.*, 182 F.3d 281, 289 (4th Cir. 1999). Though the North Carolina courts accord parties one year after taking a voluntary dismissal to refile an otherwise time-barred action

so long as the original suit was filed within the limitations period, *see* N.C. Gen. Stat. § 1A-1, Rule 41A; *Georgia-Pacific Corp. v. Bondurant*, 344 S.E.2d 302, 365 (N.C. Ct. App. 1986), Aikens's claim was not voluntarily dismissed.

Consequently, and notwithstanding counsel's understandable efforts to keep from conceding as stale any sort of claim his client may yet pursue, the precise date by which Aikens was required to file in order to forestall a legitimate limitations defense remains very much an open question. It was no less so on March 31, 2008, when, back before the district court, counsel had to decide how to proceed. Litigators, by training and experience, tend to be careful, risk-averse sorts, who are loath to leave the house with a mere belt keeping their pants in place, especially when they also have a perfectly good pair of suspenders hanging in the closet. I do not doubt for an instant that counsel, buoyed by the district court's express invitation to return in the initial proceeding, discounted the possibility of commencing a new suit as entailing needless risk of a meritorious limitations defense. Under the circumstances, counsel probably expected his Rule 60(b) motion to be summarily granted, with the new-suit option reserved as part of a fallback plan and not invoked prematurely.

Of course, starting anew must have seemed even less palatable after the court delayed its ruling until November 5, 2008, taking longer to deny the Rule 60(b) motion than Aikens did to return from his enforced dalliance with the ABCMR. But let us suppose that counsel indeed had pressed forward with refiling instead of taking this appeal, in which case it is apparent that the district court would have had to resolve the limitations issue. In so doing, the court would not have lacked the means to consider the equities. The North Carolina courts recognize the general principle that "time frames may be tolled where equitable considerations justify their suspension." *Republic Indus. v. Teamsters Joint Council*, 718 F.2d 628, 644 (4th Cir. 1983) (quoted in *Fairway Outdoor Adver. v.*

*Edwards*, 678 S.E.2d 765, 771 (N.C. Ct. App. 2009)). The Supreme Court of the United States has likewise acknowledged "a traditional equitable tolling principle," if appropriately tailored and not contrary to the expressed will of the legislative branch. *Honda v. Clark*, 386 U.S. 484, 501-02 (1967).

There is a relative paucity of North Carolina law lending insight as to the circumstances its courts might consider sufficient to justify equitable tolling of an applicable statute of limitations. A number of reported cases, however, involve some sort of misleading act or statement on the part of the defendant that justifiably induces the plaintiff to defer timely prosecution of the claim. *See, e.g.*, *Duke Univ. v. Stainback*, 357 S.E.2d 690 (N.C. 1987) (ruling that defendant debtor could not invoke statute of limitations to bar action by plaintiff creditor where debtor and his lawyer had caused creditor to forbear from collection efforts by representations that creditor would be paid from proceeds of lawsuit against third party); *Nowell v. Great Atl. & Pac. Tea Co.*, 108 S.E.2d 889 (N.C. 1959) (concluding that builder's intermittent actions and assurances in attempting to correct structural construction defects before finally disclaiming further responsibility served to toll limitations period).

Although this line of authority may suffer somewhat from lack of development, I can say with some confidence that the results in cases like *Stainback* and *Nowell* obtain primarily from an innocent plaintiff having been deceived, and only secondarily from the near inevitability that the defendant has been the instrument of that deception. Equity exists to reward the deserving, more so than to punish the culpable. *See Stainback*, 357 S.E.2d at 341 ("Actual fraud, bad faith, or an intent to mislead or deceive is not essential to invoke the equitable doctrine of estoppel."). The point is well illustrated in *Carlile v. South Routt Sch. Dist. RE 3-J*, 652 F.2d 981 (10th Cir. 1981). In *Carlile*, the plaintiff was allowed to maintain her Title VII action although it had been filed fifty-one days late.

The plaintiff's dilatoriness was caused by an earlier order of the district court, entered within the commencement period, that granted a form motion allowing her to proceed without payment of fees and costs and appointing an attorney to represent her. The order further provided "[t]hat this action shall be deemed commenced upon filing of the aforesaid Motion." *Carlile*, 652 F.2d at 983.

The Tenth Circuit dismissed an attempted appeal of the lower court's interlocutory decision permitting the case to go forward, notwithstanding that the defendant was in no way responsible for the late filing. In ruling on behalf of the plaintiff, the court of appeals reasoned that "[i]nasmuch as she would suffer a considerable hardship if we were to set the order aside, we are obliged to permit the order to stand." *Carlile*, 652 F.2d at 986. Subsequently, in declining relief to another late-filer, the Supreme Court of the United States cited *Carlile* with approval to distinguish its situation "where the court has led the plaintiff to believe that she had done everything required of her," from the one in which a plaintiff of her own accord deems it sufficient to file a mere right-to-sue letter as an attempted substitute for a complaint. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (per curiam). I presume that the North Carolina courts, if confronted with an analogous situation, would find *Baldwin County* and, in turn, *Carlile* persuasive authority. The upshot is that Aikens may yet have his day in court notwithstanding the majority's decision today.

This matter, however, should not have been enshrouded in such uncertainty. The district court in the proceedings below was confronted with a Rule 60(b) motion, and not a new complaint filed potentially out of time, but the same equitable principles doubtlessly apply. If the court could find sufficient justification to permit Aikens to file a new lawsuit, then it could — and should — have found the "extraordinary circumstances" necessary to grant Aikens's motion pursuant to Rule 60(b)(6). There is no authority for the proposition that the

necessary threshold showing in the latter case is any more onerous than in the former.[11] All things being equal, there is little reason to compel a plaintiff in Aikens's shoes to submit a new complaint duplicative of the one already on file, to pay another $350 filing fee, and to draft and serve a second set of summonses on multiple defendants, waiting, perhaps, for another year or more until the "new" case ripens to the same extent as the old one had. But when all things are decidedly *not* equal — when resort to a remedy may very well depend on the suit being timely filed — the time has come, in the interests of justice and fairness, to stop standing on ceremony.

D.

The majority professes its fear that reinstatement of Colonel Aikens's lawsuit in this lone instance would endanger the finality of judgments across the breadth of our domain, decreeing that the supposed mandate of the federal rules for strict deadlines admitting of few (or no) exceptions shall remain inviolate. *See ante* at 8. In another case, the majority would be right to jealously protect the familiar, if amorphous, principle that litigation, at some point, must be suffered to end. In this case, however, the litigation has not been suffered to begin.

Why that should be is an utter mystery. Colonel Aikens has pleaded facts that, if true, invite outrage. The Complaint depicts a literally unwarranted intrusion into the private communiques of a citizen-soldier stationed many thousands of miles from home and serving in the best traditions of the nation's militia, humiliated and disgraced by a nominal superior in the pursuit of an unseemly personal vendetta. That the majority has picked this particular instance to stand on cere-

---

[11]This in spite of the majority's quotation, *ante* at 8, of a Supreme Court *dissenting* opinion to support its supposition that Rule 60(b)(6) is subject to "a very strict interpretation" that admits of relief in extraordinary circumstances that "only truly" fit the bill.

mony and strike a mortal blow against slovenly papering of the court file is baffling. Surely whatever interest the federal courts may have in conducting their gatekeeping function with spit-and-polish regimentation is necessarily at its nadir when the cause is just, the wayfarer worthy, and the path untrodden.[12]

The majority pays lip service to these notions of justice and fairness, declaring that we have required movants like Aikens to "have a meritorious claim or defense and that the opposing party not be unfairly prejudiced." *Ante* at 8.[13] Those additional requirements are not found in the text of Rule 60(b)(6), which, outside of the specific grounds enumerated in its predecessor paragraphs, enables invocation simply for "any other reason that justifies relief." And they are honored today only in the breach, inasmuch as it is plain that Colonel Aikens's claim is substantial on its face and that it would hardly be unfair to bring the defendants to answer for their alleged actions.

Moreover, it is of no small irony that the majority's slavish adherence to what it characterizes as the spirit (if not the let-

_____

[12]As the concurrence points out, *ante* at 19, Aikens candidly admits in his Amended Complaint that Army investigators utilized the ill-gotten and stolen emails to substantiate certain unflattering allegations against him. Importantly, however, Aikens has never admitted the accuracy of the underlying allegations. In assessing whether to dismiss pursuant to Rule 12(b)(6), the district court was bound to view the facts alleged in the Amended Complaint in the light most favorable to Aikens. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The record underwent no further development before the ABCMR, so in deciding whether to grant Aikens relief pursuant to Rule 60(b)(6), the court would have been constrained to again give him the benefit of the doubt. Of course, to the extent that Aikens's own conduct would have been relevant to his claims against Ingram and von Jess, the district court could have resolved all doubt by permitting the case to proceed.

[13]*Accord*, *Heyman v. M.L. Mktg. Co.*, 116 F.3d 91, 94 n.3 (4th Cir. 1997) (citing *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993)).

ter) of Rule 60(b)(6), contravenes the explicit command of the rule that governs all the rest — Rule 1 — which provides that all of the rules of civil procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *cf. Nat'l Bondholders Corp. v. McClintic*, 99 F.2d 595, 600 (4th Cir. 1938) (observing that, in accordance with Rule 1, successful administration of all federal civil procedure rules depend upon "their application in various situations . . . be[ing] subject to sound judicial discretion"). The majority thus approves what is, in effect, a dismissal sanction upon Colonel Aikens for what it perceives to be the shortcomings of his lawyer (a perception that I enthusiastically reject). We have proclaimed that such a drastic course of action "is usually inappropriate when it unjustly penalizes a blameless client for the attorney's behavior." *Hillig v. Comm'r of Internal Revenue*, 916 F.2d 171, 174 (4th Cir. 1990). Although our occasional refusal to enforce against clients the expected consequences of their lawyers' negligence typically arises in the context of a Rule 41(b) involuntary dismissal, perhaps as a discovery sanction, *see id.*, or for an attorney's failure to diligently prosecute the case, *see McCargo v. Hedrick*, 545 F.2d 393 (4th Cir. 1976), there is no good rationale to exclude the same concept from our equities calculus here.

### III.

At the end of the day, Colonel Aikens was right — and the district court was wrong — about whether so-called "exhaustion" before the ABCMR was necessary before Aikens could pursue his 42 U.S.C. § 1983 claim. The misperception on the court's part need not have been more than a hiccup had it simply followed Supreme Court precedent and ordered a stay. Rather than acknowledging its errors upon Aikens's return, however, the district court compounded them by rejecting his motion pursuant to Rule 60(b)(6). The court did so although it had explicitly assured Aikens that he could have his claims reinstated if his position was vindicated. Although the district

court may now wish to retreat from that representation, Aikens was plainly entitled to rely on the court's word. The majority's decision today to the opposite effect, grounded in condemning Colonel Aikens for losing an unwinnable game of "gotcha," discredits our system of justice.

If the majority's approach is all it takes to foreclose a finding of extraordinary circumstances for Rule 60(b)(6) relief, that is, if a court can punish a movant for pursuing reasonable and legitimate strategies simply because — with the benefit of hindsight — the court can conjure up possible alternatives, it is hard to imagine that Rule 60(b)(6) relief can ever be obtained. To the contrary, I am convinced that, in light of the serious nature of Aikens's claims, the lack of unfair prejudice to the defendants, and the court's own significant contribution to the untidiness of the situation, its denial of relief was a clear abuse of discretion.[14] Consequently, I would vacate the

---

[14]I am not unmindful that, in reviewing all sorts of rulings for abuse of discretion, we have habitually insisted that we will not substitute our judgment for that of the district court. *See, e.g.*, *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995). I confess that the rule derived from *Mason* seems of little practical use, in that any time we disturb a judgment on abuse-of-discretion grounds we are necessarily substituting what we consider to be a more sound judgment for that rendered below. What we really mean is that when two outcomes are each within the realm of reason, we will not substitute our reasonable result for the similarly plausible one reached by the district court. The question is how much leeway each of us, as an appellate judge, is willing to give a trial judge in a particular case. My friend Judge Davis, in his fine dissenting opinion, ably and cogently illustrates the point through Judge Friendly's musings and otherwise. I think we would all agree that, in general, it is a good idea to let those judges on the front lines dispose of their caseloads without undue interference from those of us one step removed. But every so often, a case arises to snap us out of our rubber-stamp reverie, and for me, this is such a case. I am not content to lend my imprimatur to what occurred below under the guise of deference; instead, I have found myself stirred to action against the inertia of affirmance. That I would vacate the order on appeal stems directly from my definite and firm conviction that the district court made a clear error of judgment in bypassing the opportunity to easily and efficiently correct its earlier mistake of law, thereby serving substantial justice.

district court's Rule 60(b) Order and remand for such further proceedings as may be appropriate.

I respectfully dissent, and I am pleased to state that Judge Motz, Judge Gregory, Judge Davis, and Judge Keenan concur in this dissenting opinion.

DAVIS, Circuit Judge, dissenting:

I am most pleased to join in full Judge King's compelling dissenting opinion. I write to offer a few additional observations.

Even a most astute student of this court's jurisprudence must be forgiven for failing to identify the "rule" of this case. As best as I can discern, the majority's admonishment to counsel facing analogous circumstances in the future seems to be: "Appeal everything, all the time, right away." One might question if that is any way to run a (judicial) railroad. Judge King's excellent dissent, on the other hand, would have the salutary effect of encouraging district courts to correct their own errors when given the opportunity to do so. Here, the district court had that opportunity but elected to let it pass. We should reverse, signaling to district courts around the circuit that such opportunities should be seized, not abjured.

Despite its publication, and thus its precedential character, the majority opinion provides district courts with little guidance beyond the bare ruling itself—the highly fact-specific determination that, under the totality of the circumstances shown, the district court did not "abuse its discretion" in failing to find "extraordinary circumstances" under Fed. R. Civ. P. 60(b)(6). Likewise, there seems scant possibility that a future three-judge panel of this court will find anything helpful here.

We sometimes flash conflicting signals to the district courts as to how they might best exercise their discretion to adminis-

ter the Federal Rules of Civil Procedure. *Compare Felty v. Graves–Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (declaring "the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial [by granting summary judgment]") (internal quotation marks omitted), *with Andrew v. Clark*, 561 F.3d 261, 271 (4th Cir. 2009) ("The Advisory Committee Notes . . . highlight the discretion that district courts are given to deny summary judgment motions even when the standard appears to have been met . . . .), *and Forest Hills Early Learning Ctr., Inc. v. Lukhard*, 728 F.2d 230, 245 (4th Cir. 1984) ("Even where summary judgment is appropriate on the record so far made in a case, a court may properly decline, for a variety of reasons, to grant it.") (citations omitted). But, on the whole, we endeavor to provide useful guidance to the district courts in the exercise of their considerable discretion in administering the civil rules. Regrettably, as Judge King's powerful dissent demonstrates, we have failed in that mission here.

The majority opinion purports to warn against a danger of "giv[ing] Rule 60(b)(6) broad application" as doing so would "undermine numerous other rules that favor the finality of judgments." *Ante* at 8. It correctly notes that we review the district court's ruling for abuse of discretion and that "appeal from the denial of a motion under Rule 60(b)(6) does not bring up the underlying judgment for review." *Ante* at 9 (quoting *Browder v. Dir., Dep't of Corrections of Ill.*, 434 U.S. 257, 263 n.7 (1978)). Yet the very authorities the majority opinion cites demonstrate that it is sometimes impossible to assess the propriety of the district court's exercise of its considerable discretion without carefully scrutinizing the effect of its underlying error, and moreover, that simple fairness sometimes requires that the majority's "very strict interpretation of Rule 60(b)," *ante* at 8 (quoting *Liljeberg*, 486 U.S. at 873 (Rehnquist, C.J., dissenting)), give way to a more expansive reading.

In its discussion of the standard of review, the majority cites to two principal cases: *Browder* and *National Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir. 1993). *Ante* at 9. *Browder* adopted the abuse of discretion standard in a footnote, citing to two circuit court cases. One of those, *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999 (7th Cir. 1971), actually looked to the merits of the underlying judgment on grounds of fairness:

> While Rule 60(b) is not a substitute for an appeal and the finality of judgments ought not be disturbed except on very narrow grounds, *a liberal construction should be given the rule to the end that judgments which are void or are vehicles of injustice not be left standing*. Accordingly, we believe that the circumstances of this case, including the basis for the relief sought, are such that we may properly make a primary inquiry into the legality of the discovery orders and the procedures leading to the dismissal of movants' claims.

450 F.2d at 1003 (internal citations omitted) (emphasis added). Among these circumstances was the fact that the district court employed "the drastic sanction of dismissal of [the movants'] claims with prejudice." The Seventh Circuit concluded its discussion of the proper standard of review by noting, "Under these circumstances, we believe that principles of fairness warrant our giving full consideration to the merits of movants' arguments." *Id.* at 1004. The court ultimately affirmed the denial of the 60(b) motion, but only after determining that it agreed with the district court on the merits.

Similarly, in *National Credit Union*, we made clear:

> We review denials of Rule 60(b) motions for abuse of discretion. *Werner v. Carbo*, 731 F.2d 204, 206 (4th Cir. 1984). "However, where default judgments are at issue, over the years this court has taken

> an increasingly liberal view of Rule 60(b) . . . ." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 810 (4th Cir. 1988). Although this case is not technically a default judgment, it resembles one closely enough for the usually strict standard of review to be tempered somewhat.

1 F.3d at 265 (internal citations omitted) (emphasis added). There, the movant/defendant was ruled to have admitted all items in plaintiff's request for admissions because the lawyer for a co-defendant, who claimed not to have been representing the movant, did not enter answers for him. The district court used these admissions to grant summary judgment to plaintiff with respect to the movant.

That case contains an interpretation of Rule 60(b)(6) that again looks to fairness:

> We believe this case falls within subsection (b)(6), a "catchall provision which allows a court to grant relief for any reason . . . ." Although "[t]he remedy provided by the Rule . . . is only to be invoked upon a showing of exceptional circumstances . . . ," *Compton v. Alton Steamship Co.*, 608 F.2d at 102, *we believe this case cries out for the exercise of that "equitable power to do justice."*

*Id.* at 266 (emphasis added). The court went on to remand with instructions to vacate the underlying judgments.

Of course there are times when the facts surrounding consideration of a Rule 60(b) motion are such that a district court *must* slam shut the courthouse door to a potentially deserving claimant. But, there are other occasions when a district court *may, but is not required*, to slam shut that door, and the decision lies within the ambit of the district court's discretion. Whatever the district court's decision, we are to reverse only for an abuse of discretion. Yet, by the light of the very cases

relied upon by the majority opinion to establish that standard of review, one can see that the equities in a given case may demand that we "temper[ ] somewhat" our "usually strict standard of review" and "exercise . . . [our] equitable power to do justice." *Id.* at 265-66.

Any suggestion that the "abuse of discretion" standard of review is some immutable mandate that ties the hands of appellate courts was convincingly debunked nearly thirty years ago by Judge Friendly:

> When we look at the spectrum of trial court decisions, we find a wide variance in the deference accorded to them by appellate courts. In some instances the trial court is accorded broad, virtually unreviewable discretion . . . . In others, the trial judge's decision is accorded no deference beyond its persuasive power . . . . Our concern is with determinations where the scope of review falls somewhere between these extremes. How much deference should be accorded to various determinations along this continuum? Just as the answer to the constitutional inquiry "what process is due?" depends upon the costs and benefits of procedural safeguards in different instances, defining the proper scope of review of trial court determinations requires considering in each situation the benefits of closer appellate scrutiny as compared to those of greater deference.

Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 755-56 (1982) (footnotes omitted). Disregard of this long-accepted reality runs a grave risk that substantial justice will be denied to those prejudiced by well-meaning district courts and well-intentioned appellate courts.

Thus, where, as here, a district court exercises its discretion in a case-dispositive manner, this court should scrutinize the exercise of that discretion with care to ensure that there has

not been "an error of judgment" by the district court. *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 506 (4th Cir. 1977) (warning against the threat of becoming a "rubber stamp" as to dispositive, "door-slamming" orders of district courts). Where, as here, such a prejudicial error of judgment comes before us, we should correct the error. This approach is in keeping with this court's strong preference that cases be decided on their merits. *Cf. Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 n.3 (4th Cir. 2010) ("[W]e have long adhered to the sound public policy of deciding cases on their merits, . . . and not depriving . . . part-[ies] of [their] fair day in court.") (citations and internal quotations omitted).

Manifestly, no matter how ample a court's discretion, some decisions will fall outside of it. The fabric of the law may have many swatches of stubborn indeterminacy, but some legal questions really have a right answer, even when their resolution is committed to a court's discretion. And though in some familiar contexts legal error may survive federal appellate review, e.g., *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (noting that the Antiterrorism and Effective Death Penalty Act shields erroneous state court applications of federal law unless "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents"), here we exercise direct review of our own lower court's application of federal law. *See* Kim McLane Wardlaw, *Umpires, Empathy, and Activism: Lessons from Judge Cardozo*, 85 Notre Dame L. Rev. 1629, 1634 (2010) ("A swing and a miss is a strike, and the umpire lacks discretion to call it otherwise.").

The Supreme Court recently reminded us that "[a] trial court has wide discretion when, but only when, it calls the game by the right rules." *Fox v. Rice*, No. 10-114, 2011 WL 2175211, *8 (U.S. June 6, 2011). In this instance, the district court's erroneous dismissal of the case in reliance on a requirement that Colonel Aikens exhaust a non-existent

administrative remedy, coupled with its subsequent refusal to undo that erroneous order despite the availability of a specific rule of civil procedure designed precisely as a balm for such judicially-inflicted wounds, constituted a failure to "call[ ] the game by the right rules" and thus an abuse of its "wide discretion." *Id.*

*Assessing* an exercise of discretion, every bit as much as *exercising* discretion in the first instance, is, like calling balls and strikes, an art and not a science. If indeed we are sometimes "umpires," the en banc court, like the panels of this court, most often gets it right, but it sometimes makes the wrong call. Because, for the reasons stated so persuasively by Judge King, the en banc majority's decision in this case must be recorded in the "wrong call" column, I respectfully dissent.